# IN THE SUPREME COURT, STATE OF WYOMING

# 2016 WY 70

APRIL TERM, A.D. 2016

July 12, 2016

DONALD EARL YOUNG,

Appellant
(Defendant),

v.

S-15-0232

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*

    *Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel. Patricia L. Bennett, Appellate Counsel. Argument by Ms. Bennett.*

*Representing Appellee:*

    *Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Jesse B. Naiman, Assistant Attorney General. Argument by Mr. Naiman.*

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   Donald Young appeals his conviction of driving under the influence of alcohol. He contends that the district court erred in permitting the State to introduce expert testimony involving retrograde extrapolation to prove that Mr. Young's blood alcohol level was above 0.08% while he was driving on the night in question.[1]  We affirm.

## ISSUE

[¶2]   The issue to be resolved, as set forth by the State, is whether the district court committed plain error when it allowed the State to introduce retrograde extrapolation evidence.

## FACTS

[¶3]   On the evening of August 1, 2014, Lanette Brown and her son, DY, were visiting her cousin and his children.  They were outside in the yard.  At around 10:30 that evening, Mr. Young drove his vehicle, a red Cadillac, to the cousin's home, intending to pick up his son.  Ms. Brown testified that she "knew [Mr. Young] was intoxicated because he was kind of staggering, and he was a little bit belligerent towards my cousin." She smelled the odor of alcohol on him.  He asked where his son was, even though the boy was standing nearby.  She told Mr. Young that he could not take his son.

[¶4]   Apparently ignoring her, Mr. Young took his son by the arm and pulled him toward the car.  The son also smelled alcohol on his father's breath, and did not want to get in the car with him.  He pulled away from his father, and ran to his own home a short distance away.  Mr. Young returned to his car, and started driving it down the street in reverse.  He was driving fast, and his tires were squealing and screeching, when he struck a parked vehicle.  Hearing the crash, Ms. Brown called 911.  She made the call at 10:39 p.m.

[¶5]   By the time police arrived, Mr. Young and his car had left the scene of the collision.  Another team of police went directly to Mr. Young's residence.  They arrived at the residence at approximately 10:50 p.m. and found Mr. Young outside his residence. They also observed a Cadillac with damage that an investigating officer described as "fresh."  When the officers interviewed Mr. Young, they observed that he smelled of

---

[1] Retrograde extrapolation "is a mathematical calculation used to estimate a person's blood alcohol level at a particular point in time by working backward from the time the blood alcohol test was taken, taking into consideration rates of both absorption and excretion."  *Commonwealth v. Senior*, 744 N.E.2d 614, 619 (Mass. 2001).

alcohol, had bloodshot eyes, and slurred his speech. The police subjected him to field sobriety tests. After concluding the tests, the officers determined that Mr. Young was intoxicated and arrested him. At the police station, at sixteen minutes after midnight, Mr. Young was given a breath test, which indicated his blood alcohol level was 0.079%. He was charged with driving under the influence of alcohol, fourth offense, in violation of Wyo. Stat. Ann. § 31-5-233(b) (LexisNexis 2013). He was also charged with unlawfully operating a vehicle without a required ignition interlock device in violation of Wyo. Stat. Ann. § 31-7-404(a), failure to stop upon colliding with an unattended vehicle in violation of Wyo. Stat. Ann. § 31-5-1104, and failure to maintain liability coverage in violation of Wyo. Stat. Ann. § 31-4-103(a).

[¶6]    Prior to trial, Mr. Young filed a motion in limine. According to the motion, "It is the Defendant's intent to object at trial, if and when, the [State] attempts to put on any and all evidence in reference to the defendant's consumption of alcohol (without accounting for the time the defendant was not in the presence of law enforcement or any other witness)." The motion asserted that this evidence is irrelevant "without accounting for the Defendant's actions between the period of time police responded to a report of a hit and run accident; and, the time law enforcement made contact with the defendant." The motion identified the Defendant's blood alcohol content taken at the Natrona County Detention Center, testimony from a retrograde extrapolation expert, video from the police cruiser of the field sobriety tests administered by the Casper Police Department, and video from the police cruiser of the Defendant being transported to the Natrona County Detention Center as examples of evidence that were included in the motion. After argument, the district court denied the motion. The court did, however, clarify that the evidence at issue could be challenged during trial and that the court would be "inclined to give the Defense a right to voir dire if there needs to be clarification with testimony under oath to support the concerns that have been expressed by the Defense."

[¶7]    During trial, the State called Moss Kent, a forensic toxicologist, to testify. Mr. Kent testified that based on his retrograde extrapolation calculations, Mr. Young's blood alcohol concentration at 10:39 p.m. on the night in question would have been between 0.095% and 0.124%, above the legal limit of 0.08% set out in Wyo. Stat. Ann. § 31-5-233(b)(i). He explained that his opinion was based on the undisputed fact that the breathalyzer test Mr. Young took 97 minutes after the accident showed a blood alcohol level of 0.079%. He testified that a person eliminates alcohol from his body at a steady, constant rate. Accordingly, if a person's blood alcohol level is known at a certain point in time, his blood alcohol level at an earlier time may be determined by calculating how much alcohol was eliminated from his body between the two points in time. Mr. Kent also testified that different people eliminate alcohol at different rates. Because he did not know Mr. Young's particular rate of elimination, he used a range of elimination rates. He calculated that Mr. Young's blood alcohol level when he was driving his car would have ranged from 0.095% to 0.124%. His opinion was predicated upon the assumption that Mr. Young was in the post absorption phase when the breathalyzer test was given.

[¶8]    When the State sought to admit Mr. Kent's retrograde extrapolation calculations into evidence, the district court asked Mr. Young if he had any objection.  Mr. Young did not object.  After the State rested, Mr. Young moved for a judgment of acquittal.  The district court granted the motion as to the charge of failure to maintain liability coverage, but denied the motion as to the three other charges.

[¶9]    The jury was provided with two options for determining whether Mr. Young was guilty of driving under the influence:  The jury could find Mr. Young guilty if it determined that he was 1) driving with a blood alcohol concentration of 0.08% or more and/or 2) driving "under the influence of alcohol to a degree which rendered him incapable of safely driving a vehicle."  The jury was instructed that it could find Mr. Young guilty on "one theory, or the other, or both."  The jury found Mr. Young guilty of driving "under the influence of alcohol to a degree which rendered him incapable of safely driving a vehicle."  The jury did not find that Mr. Young was guilty of driving with a blood alcohol concentration of 0.08% or more.  Mr. Young was also found guilty of driving without an interlock device and of failure to stop after colliding with an unattended vehicle.  The district court sentenced Mr. Young to four to six years for driving under the influence.[2]  This appeal followed.

## STANDARD OF REVIEW

[¶10] Mr. Young asserts that the district court's decision to admit the retrograde extrapolation evidence should be reviewed for an abuse of discretion.  The State contends that the decision must be reviewed for plain error.  We agree with the State.

[¶11] We have previously ruled that a party must "object during trial to preserve the issue raised in its motion in limine, unless it can be said that the district court's ruling on that motion was definitive."  *Hicks v. Zondag*, 2014 WY 16, ¶ 14, 317 P.3d 606, 610 (Wyo. 2014).  In Mr. Young's case, when the district court denied the motion, it expressly indicated that Mr. Young could raise the objection again at trial:

> [H]ere's how I see this, is the challenge really may be as to the qualifications and surely as to the proper foundation for any opinion testimony such as that that's been identified here. And it seems to me that those may be matters that can be challenged at the time any proposed opinion is to be rendered,

---

[2] Mr. Young was also sentenced to serve seventy-five days in the county jail for each of the other two counts.  However, he was also given seventy-five days of credit on both sentences for time already served.  He has not appealed those convictions.

whether there's sufficient foundation, whether the opinion can be rendered to a degree of scientific certainty, whether the opinion is one that meets the standards of the testing industry as to the extrapolation that might be proposed.

So seems to me that it would be a challenge that could potentially be made with respect to the individual concerns that might attend to any opinion from [the expert], and we'll follow the usual procedures and require qualifications, require proper foundation. And I'd be inclined to give the Defense a right to voir dire if there needs to be clarification with testimony under oath to support the concerns that have been expressed by the Defense.

[¶12] Seeking clarification, the prosecutor asked if he could "just go with my questioning [of the expert witness] and wait until an objection arises?" The district court responded, "Correct." Defense counsel then inquired, "[W]hen you say I would have the opportunity to voir dire the witness, would that be outside the presence of the jury?" The district court answered, "I don't believe so. I think we could handle it here in open court."

[¶13] The district court made it plain that its ruling on the pretrial motion was not a final answer as to the admissibility of the retrograde extrapolation evidence at trial. Questions from both the prosecutor and the defense counsel indicated that they understood that the district court was not making a definitive decision on whether to admit or exclude the evidence, but would make a final ruling when the testimony was offered at trial if an objection was made. Mr. Young was required to object at trial in order to preserve the issue. He did not. Accordingly, we will apply the plain error standard of review. "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Guy v. State*, 2008 WY 56, ¶ 9, 184 P.3d 687, 692 (Wyo. 2008) (quoting *Talley v. State*, 2007 WY 37, ¶ 9, 153 P.3d 256, 260 (Wyo. 2007)).

## DISCUSSION

[¶14] "Under the plain error standard of review, we reverse a district court's decision only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." *Town v. State*, 2015 WY 78, ¶ 9, 351 P.3d 257, 260 (Wyo. 2015) (quoting *Masias v. State*, 2010 WY 81, ¶ 20, 233 P.3d 944, 950 (Wyo. 2010)). Stated another way, plain error is "a 'clear' or 'obvious' error that should have been readily apparent to the district judge, such that failure to object would not deprive the court of a reasonable opportunity to correct it." *United*

4

*States v. Turrietta*, 696 F.3d 972, 981 (10th Cir. 2012).

[¶15] Mr. Young's claim of error focuses upon the testimony of Moss Kent and his retrograde extrapolation calculations. Mr. Young notes there is no evidence in the record accounting for his actions during the approximately fifteen minutes between his contact with Ms. Brown and the arrival of the police at his residence. He claims "it is probable he consumed additional alcohol" during this period. Notably, however, he does not point to any evidence in the record supporting his assertion. In any event, Mr. Young claims that the district court should not have admitted Mr. Kent's testimony because, without knowledge of whether Mr. Young had consumed alcohol during that interval, Mr. Kent could not perform an accurate retrograde extrapolation or form a reliable opinion as to Mr. Young's level of intoxication when he was driving his car. Ultimately, Mr. Young's challenge relates to the foundation supporting Mr. Kent's testimony. *Taylor v. State*, 642 P.2d 1294, 1295 (Wyo. 1982) ("Foundation testimony is that testimony which identifies the evidence and connects it with the issue in question.") (citing 3 Jones, *Evidence* § 15.2, at 4 (1972)); *Thunder Hawk v. Union Pac. R.R.*, 891 P.2d 773, 780 (Wyo. 1995) ("In order to establish a proper foundation pursuant to W.R.E. 703, the proponent of the evidence must show that the evidence is information of a type customarily relied upon by experts in the field and that the evidence is sufficiently trustworthy to make the expert's reliance upon it reasonable.").

[¶16] As noted above, Mr. Young did not object to the admission of Mr. Kent's testimony at trial. Accordingly, review for plain error is the only review available to Mr. Young. Before embarking upon that analysis, however, we note that several jurisdictions have refused to conduct a plain error review where the defendant failed to object on the basis of inadequate foundation. These cases reason that the defendant's failure to object deprives the State of an opportunity to correct any deficiency in the proof and, as a result, provides an opportunity for the defendant to seek reversal of his conviction in the event of an unfavorable outcome at trial. For example, in *State v. Honsinger*, 386 S.W.3d 827 (Mo. Ct. App. 2012), the defendant claimed the trial court committed plain error in admitting the testimony of a police officer relating to results of a horizontal gaze nystagmus test because the State failed to show the officer was sufficiently trained and had administered the test appropriately. *Id.* at 829. The court, citing a line of precedent, concluded that the claim could not be considered for the first time on appeal:

> A claim after a trial that there was no adequate foundation for an expert's opinion is not a subject for plain error review. *State v. Hudson*, 970 S.W.2d 855, 860 (Mo. App. S.D. 1998). Claims of inadequate foundation will not be considered for the first time on appeal. *Id.* "'It is particularly important that where an inadequate foundation has been laid for admission of evidence that the objection made be specific as such

foundation deficiencies can frequently be remedied. We will not review the contention of inadequate foundation raised for the first time on appeal.'" *Id*. (quoting *State v. Jones*, 569 S.W.2d 15, 16 (Mo. App. St.L.D. 1978)).

> If a question exists as to whether the proffered opinion testimony of an expert is supported by a sufficient factual or scientific foundation, the question is one of admissibility. It must be raised by a timely objection or motion to strike.
>
> Once opinion testimony has been admitted, as any other evidence, it may be relied upon for purposes of determining the submissibility of the case. The natural probative effect of the testimony is a consideration for the fact finder.

*Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 616 (Mo. banc 1995) (internal citations omitted). The reasoning behind this is that if an objection had been made at trial that there was an improper foundation the witness could have been questioned further in order to establish the proper foundation. *State v. Rose*, 86 S.W.3d 90, 111 (Mo. App. W.D. 2002) (Spinden, P.J., concurring) (where by withholding a specific objection the defendant avoided the prosecutor's ability to cure the problem with a proper question). Otherwise, the defendant could wait until an unfavorable outcome and then seek reversal on appeal. *Id*. The circuit court did not err in admitting evidence offered without objection. "Plain error is not facially established, and this Court declines to exercise its discretion and grant plain error review in this matter." *State v. Jackson*, 186 S.W.3d 873, 883 (Mo. App. W.D. 2006).

*Honsinger*, 386 S.W.3d at 829.

[¶17] Similarly, in *People v. Sparks*, 780 N.E.2d 781 (Ill. App. Ct. 2002), the defendant claimed for the first time on appeal that the State failed to introduce evidence showing that certain devices used to measure distance were accurate, and that the police officers were adequately trained in using such devices. The court refused to consider the argument on appeal:

> Defendant has waived this issue for our review because he

failed to object to the foundation of this evidence below. This court has previously held that a defendant's objection to the foundation for the admission of evidence is waived on appeal when no objection on foundational grounds was made to the evidence in the trial court. *People v. Bostelman*, 325 Ill. App. 3d 22, 30, 756 N.E.2d 953 (2001). A timely objection in the trial court as to the foundation of technical evidence is necessary to give the State the opportunity to correct any deficiency in the proof. *People v. Bynum*, 257 Ill. App. 3d 502, 514-15, 196 Ill. Dec. 179, 629 N.E.2d 724 (1994) (holding that defendant waived any Rule 703 objection to an expert's use of a gas chromatography mass spectrometer to determine the presence of PCP in a substance by failing to object at trial). Moreover, the State's failure to lay the proper technical foundation under Rule 703 is not reviewable under the plain error doctrine. *Bynum*, 257 Ill. App. 3d at 515.

*Sparks*, 780 N.E.2d at 784; *see also State v. Moussa*, 53 A.3d 630, 641 (N.H. 2012) (emphasizing that a timely objection in the trial court as to the foundation of technical evidence is necessary to give the State the opportunity to correct any deficiency in the proof).

[¶18] We find the reasoning of these cases to be compelling. If a party raises a timely objection, the other party has the opportunity to lay an adequate foundation. Mr. Young's failure to object deprived the State of an opportunity to cure any deficiency in the foundation for the opinion testimony.[3] Accordingly, we question whether the appellant's claim is properly considered for the first time on appeal. We are reluctant to decide the case on this basis, however, because the issue was not raised or briefed by the parties. We will instead turn to the question presented, which is whether Mr. Young has established plain error.

[¶19] Plain error is found only when the appellant can show a violation of a clear and unequivocal rule of law. *Guy*, ¶ 9, 184 P.3d at 692. Significantly, the question of the admissibility of retrograde extrapolation evidence is one of first impression for this Court.

---

[3] To be clear, we are not saying that there was an inadequate foundation for the opinion testimony in this case. Mr. Kent's credentials to provide opinion testimony were not challenged. He testified that the calculations he performed are utilized by other professionals in his field and that retrograde extrapolation is a "widely accepted practice" based upon "repeatable and verifiable science." There is no evidence in the record that Mr. Young consumed any alcohol during the fifteen-minute interval at issue.

7

> Since a district court cannot be faulted for failing to act on its own motion where the law is unsettled, a matter of first impression will generally preclude a finding of plain error. *See United States v. Fishman*, 645 F.3d 1175, 1193 (10ᵗʰ Cir. 2011), *cert denied*, 132 S.Ct. 1046, 181 L.Ed.2d 740 (2012); *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003). The one exception is an error which infringes upon a "well-established constitutional [or legal] principle." *See United States v. Laureys*, 653 F.3d 27, 33, 397 U.S. App. D.C. 339 (D.C. Cir. 2011), *cert denied*, 132 S.Ct. 1053, 181 L.Ed.2d 773 (2012).

*Turrietta*, 696 F.3d at 981. *See also State v. Ortiz*, 34 A.3d 599, 604 (N.H. 2011) ("The trial court's error in this matter could not have been 'clear' or 'unequivocally obvious' because this case presents an issue of first impression."). Because there is no rule of law in Wyoming regarding the admissibility of such evidence, we cannot conclude that the district court violated a clear and unequivocal rule of law.

[¶20] Our review of cases from other jurisdictions also reveals no uniform or established rule of law applicable to this question. Mr. Young relies on *People v. Floyd*, 11 N.E.3d 335 (Ill. App. 2014), in which a division of the Illinois Court of Appeals held that the trial court's admission of retrograde extrapolation evidence constituted an abuse of discretion. In that case, the expert based his opinion on retrograde extrapolation, but acknowledged that he did not know when the defendant had stopped drinking. For that and other reasons, the appeals court found the evidence "inherently unreliable." *Id.*, ¶ 27, 11 N.E.3d at 342. It ruled that "the prejudicial effect of the retrograde extrapolation calculation substantially outweighed its probative value," and the district court should have excluded it. *Id.*, ¶ 20, 11 N.E.3d at 340. Notably, however, the court was careful to point out that the admissibility of extrapolation evidence depends on the facts of each case:

> We emphasize that our holding is limited to the specific circumstances of this case, and we recognize that retrograde extrapolation "has its place in proving that a defendant was driving under the influence." [*State v. Eighth Judicial District Court of Nevada*, 267 P.3d 777,] 783-84 [(Nev. 2011)] . . . Whether the State produces a reliable extrapolation will depend on the specific circumstances of each case.

*Floyd*, ¶ 25, 11 N.E.3d at 342.

[¶21] The State cited cases from other jurisdictions holding that retrograde extrapolation evidence is admissible. Other cases establish that retrograde extrapolation evidence may

be admissible for some purposes but inadmissible for others. *E.g.*, *Commonwealth v. Gonzalez*, 546 A.2d 26 (Pa. 1988). Our research indicates that other jurisdictions take a wide variety of analytical approaches to the admissibility of retrograde extrapolation evidence, and have reached varied conclusions. *See* 119 A.L.R. 5th 379. We find in these cases no common approach or consistent analysis that could be deemed a clear and unequivocal rule of law.

[¶22] Mr. Young has also failed to establish that he was prejudiced by admission of the retrograde extrapolation evidence. The jury was asked to determine whether Mr. Young was guilty of driving while under the influence of alcohol under two separate theories. First, it could find that he had driven with a blood alcohol level of 0.08% or higher, in violation of Wyo. Stat. Ann. § 31-5-233(b)(i). Mr. Young was not found guilty under that theory. He was found guilty of driving under the influence of alcohol "[t]o a degree which renders him incapable of safely driving," in violation of Wyo. Stat. Ann. § 31-5-233(b)(iii). There was evidence to support that finding. Ms. Brown testified that Mr. Young smelled of alcohol, and that he stumbled, slurred his words, and was belligerent. Mr. Young's son also smelled alcohol on his father, and said he did not want to go with his father because he was drunk. Mr. Young drove rapidly down the street in reverse, crashed into another vehicle, and fled from the scene of the accident. He failed field sobriety tests. In light of this evidence, there is no reasonable possibility that the jury would have returned a more favorable verdict even if the challenged evidence had been excluded.

[¶23] Affirmed.