# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 90

APRIL TERM, A.D. 2016

*September 7, 2016*

RUSSELL ROBINSON, JR.,

**Appellant**
**(Defendant),**

**v.**

S-16-0003

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*

Office of the State Public Defender:  Diane Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel.  Argument by Ms. Olson.

*Representing Appellee:*

Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne Martens, Senior Assistant Attorney General; Jonathan C. Coppom, Assistant Attorney General. Argument by Mr. Coppom.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]   Appellant Russell Robinson Jr. disagrees with a district court's decision to revoke his probation.  He contends that the district court erred at both the adjudicatory and dispositional phases of the probation revocation process.  We affirm the revocation and imposition of his sentences.

## ISSUES

[¶2]   Appellant raises three issues, which we have rephrased to more precisely reflect the record and determinations of the district court:

1.     Did the district court abuse its discretion during the adjudicatory phase of the probation revocation hearings by concluding that Robinson had violated several conditions of his probation?

2.     Was it plain error to receive hearsay evidence during the adjudicatory phase of the probation revocation process?

3.     Did the district court err in not reinstating Robinson's probation during the dispositional phase of the probation revocation process?

## FACTS

[¶3]   Pursuant to a plea agreement, Robinson pled no contest to one count of sexual battery, a misdemeanor, in violation of Wyo. Stat. Ann. § 6-2-313 (LexisNexis 2015) and to one count of false imprisonment, also a misdemeanor, in violation of Wyo. Stat. Ann. § 6-2-203(a) (LexisNexis 2015).  Because the plea was one of no contest, Robinson was not required to provide a factual basis himself.[1]

[¶4]   Robinson was sentenced to one year incarceration on each count, to be served consecutively, but the district court suspended execution of that sentence in favor of one year of supervised probation on each count, which would result in two years of probation. The probation conditions of the judgment and sentence required Robinson to sign a probation agreement, remain employed, submit to a sex offender evaluation, and complete any subsequently recommended sex offender counseling.

---

[1] "The purpose of a no contest or *nolo contendere* plea is to protect the defendant from use of the plea against him in a later civil proceeding." *Balderson v. State*, 2013 WY 107, ¶ 8 n.2, 309 P.3d 809, 811 n.2 (Wyo. 2013). The factual basis for the plea was provided to the satisfaction of the court and counsel by the original information and supporting affidavit, which charged first degree sexual assault.

[¶5]    Robinson also signed a sex offender probation agreement with the Wyoming Department of Corrections.  It contained greater detail concerning the conditions in the judgment and sentence.  It stated in pertinent part that he would:

> 16. . . . [S]ubmit to sex offender evaluation by a Sex Offender Therapist approved by my Agent and will successfully complete any recommended treatment at my own expense.  I will comply with all requirements and actively participate in treatment until released by my treatment provider.  Furthermore, I will not miss individual or group therapy without the prior permission of my Agent or Sex Offender Therapist.
>
> *        *        *
>
> 18. . . . [S]ubmit to, participate in, and pay for sex offender assessment including, but not limited to, polygraph examinations at the request of my Agent or Sex Offender Therapist.
>
> *        *        *
>
> 22. . . . [R]emain gainfully employed and support my dependents in an occupation determined appropriate by my Agent, in conjunction with my Sex Offender Therapist, unless approved otherwise due to a disability or other circumstances.
>
> 23. . . . [W]ill not begin new employment or change existing employment until given prior approval by my Agent and I will immediately notify my Agent if I am disciplined, terminated or dismissed from work for any reason.

Robinson initialed each provision of the agreement, and signed it at the end.

[¶6]    A few months later, the State filed a petition to revoke Robinson's probation.  In support of the petition, an affidavit from Robinson's probation agent, Salli Perryman, was attached.  The affidavit asserted, *inter alia*, that Robinson (1) "failed to report loss of employment to his [probation agent]," (2) "failed to submit to, participate in and pay for a polygraph examination" and (3) "failed to enroll in Sex Offender Treatment."  Robinson denied the allegations set forth in the petition.

[¶7]    In accordance with W.R.Cr.P. 39(a)(5), an adjudicative hearing was held, and the State called Ms. Perryman as its only witness.  She explained Robinson's failures

concerning the sex offender evaluation, submitting to a polygraph test, and confirming his employment. With respect to Robinson's sex offender evaluation, Ms. Perryman testified:

Q. [Prosecutor] What gave rise to the allegation wherein you assert that he has failed to complete his sex offender treatment?

A. [Ms. Perryman] When he came in to meet with me on July 9th, he denied his offense, so I referred him to our sex offender therapist, Chuck Mueller.

Q. And who completes a sex offender treatment program, if you will, with an individual defendant?

A. Who completes it?

Q. Who signs them up for that, does an evaluation?

A. I make the referral, and then Chuck Mueller does the evaluation.

Q. Okay. So did the evaluation take place?

A. Yes.

Q. Okay. And what part of the process, as alleged in paragraph 4 of the affidavit wherein you allege he failed to enroll in sex offender treatment, why do you assert that?

A. I assert that because he went and met with Chuck Mueller. He denied that he committed the offense. Because he denied that he committed his offense, Chuck Mueller has nothing to treat, so because of that, he cannot enroll in sex offender treatment.

Q. Okay. So that's the basis – that part of his sentence, his judgment and sentence is at a standstill in other words?

A. Correct.

Q. And you had recited that that was a condition of his judgment and sentence that was signed by this Court?

3

A. Yes.

[¶8] Because Robinson denied committing the offenses he had pled to, and could not therefore enroll in sex offender treatment, he was referred for a polygraph examination, as expressly provided for in the probation agreement. *See supra*, ¶5. Ms. Perryman explained:

> Q. [Prosecutor] Okay. What steps do you take as a probation agent in an instance like this wherein somebody does not successfully enroll in sex offender treatment?
>
> A. [Ms. Perryman] What we do is re-refer them for an instant offense polygraph, which is a polygraph over their offense, and then based on the outcome of that, we take a step either to return them back to treatment, or for further assessment.
>
> Q. Okay. And is that requirement articulated in any of these documents?
>
> A. Yes
>
> Q. Okay. Which document?
>
> A. It is articulated in the Probation and Parole agreement, condition number 18.

[¶9] Ms. Perryman testified that she made three attempts to have Robinson take a polygraph, all of which were unsuccessful. On the first attempt, she provided Robinson notice of the appointment several days in advance; however, at the appointment Robinson said that he was in too much pain and could not stay because he had a doctor's appointment scheduled. As a result, the polygraph was rescheduled, and Ms. Perryman asked him to bring documentation showing that he did in fact have a medical appointment. Robinson never provided that documentation.

[¶10] At the second attempt, Robinson called the morning of the scheduled examination and left a message saying he was too sick to attend. Ms. Perryman asked him to provide documentation of medical services he received for his illness that day, which he never did.

[¶11] The polygraph was then rescheduled a third time. For two weeks Ms. Perryman tried to contact Robinson and confirm that he was indeed going to show up at the scheduled time and date. He never returned her calls. Two days before the scheduled

4

appointment, Ms. Perryman went to his house to confirm the date and time. Robinson was home, and Ms. Perryman was able to speak with him and assure that he knew of the appointment. Robinson prophetically told her that he would be sick in two days and unable to take the polygraph at that time. Ms. Perryman asked for any kind of medical documentation regarding his approaching sickness, a request that went unfulfilled.

[¶12] In the end, Robinson did provide some emergency room documentation of his visits there, but those visits were on days other than when the polygraphs had been scheduled. In other words, he never provided medical documentation of illness on any of the three days he was scheduled to take the polygraph.

[¶13] With respect to Robinson's failure to maintain employment, Ms. Perryman testified that Robinson told her he was employed as the general manager at a grocery store. In accordance with her normal procedure, Ms. Perryman repeatedly requested proof of employment such as a pay stub or other documentation, which Robinson never provided. Because Robinson did not comply with the request, Ms. Perryman called the grocery store. She asked to speak with the human resources hiring manager, who informed her that they had never had an employee with Robinson's name.

[¶14] Based upon this evidence presented at the adjudicatory phase, the district court concluded that the State had proved the allegations in the petition by a preponderance of the evidence. Specifically, it determined Robinson had violated the terms of his probation because he failed to prove that he maintained employment and repeatedly failed to submit to a polygraph.[2] The district court explained its decision as follows:

> As to the employment allegation, he lied to a probation officer. That's the evidence in front of me. More than once, and perhaps a wholesale lie, if what we heard secondhand from an employer turned out to be the case. You are not supervisable, or at least you're not a primary candidate for supervision if you are not honest with the agent.
>
> \*      \*      \*
>
> As to the second allegation that he participated – you say he participated, he went there. The State isn't – isn't denying what you argued, that he showed up. But there's a reason, and it actually stems from law developed in the Wyoming Supreme Court, out of this jurisdiction, I think,

---

[2] Ms. Perryman was evidently unfamiliar with *Neidlinger v. State*, 2007 WY 204, 173 P.3d 376 (Wyo. 2007), which we discuss at length below. Although she (and perhaps the prosecutor) evidently believed that Robinson's probation could be revoked for failing to admit conduct which would permit sex offender treatment, the district court did not rely on his denial of misconduct when it adjudicated him.

why the polygraph is a separate requirement of the probation . . . . [P]rosecutors and defense attorneys . . . make agreements often to avoid victim testimony, for instance, to get past bad memories or drunken conduct by the Defendant. Whatever you do, you do.

I'm here on the record, however, of a no contest plea. I reviewed the transcript [of the plea hearing], and I went into detail with Mr. Robinson about what a no contest plea meant and what it is used for. It arose actually at an odd place in our proceeding, because at the time, I think they had come in with a guilty plea sort of agreement, but he pled no contest instead. I reviewed that colloquy, back and forth between myself and Mr. Robinson at the time of the change of plea, and of course, the sentencing proceeding where we talked about the order that would be imposed.

So I find he's been completely informed of all the consequences. And the polygraph, as I mentioned, is a separate condition because of that case law. Individuals, once all of you have used your reasons and employed your negotiating skills, you come to agreements, but sex offender treatment requires acknowledgment of the conduct, and a no contest plea doesn't provide a factual basis, so there is no acknowledgment. But if the therapist gets it, or the evaluator gets no admission of the conduct, he has failed in the treatment.

Now, over the years, this additional condition has been added to sort of catch this. In other words, you've got to take a polygraph in the end game, and that's going to determine for us – short of revocation, that will determine for the agents whether or not to hold someone to the sex offender evaluation.

The emergency room sickness, or a blood clot here or there, after the fact information supplied, wasn't the point at all, and at one point, two days before the third meeting, the agent had to find him. Now, at that point, as I did this, a couple months in – not even a couple of months in from sentencing, his agent finds him, tells him – makes sure he knows about the appointment, and what happens? He tells her then and there that two days from now I'm too sick.

6

She, of course, wrote to the District Attorney, because she was – perhaps didn't believe. It's not for her believing or not believing. He didn't testify. She did. Secondhand what I know and I believe that when confronted, he had no current medical excuse, maybe for any of them, the exact dates, but even if I gave him the benefit of the doubt of being sick during the period, being confronted two days before it, your freedom being at stake, that's an act of decision making by Mr. Robinson about complying with at least the third exam, and he clearly violated that provision as well.

And any of those standing alone would be sufficient and would result in revocation, and this will. His probation must be revoked, and consideration of disposition is next.

[¶15] At the disposition hearing, the district court considered whether to impose Robinson's sentence or whether to continue him on some form of probation with additional conditions or perhaps community corrections. The State maintained that Robinson should be incarcerated because he willfully failed to comply with the conditions of his probation.

[¶16] For his part, Robinson's attorney explained that Robinson had become compliant after the fact. That is, during the interval between the adjudicatory and dispositional phases, Robinson took the polygraph and attended several sessions of sex offender treatment.[3] Robinson was given a chance to make a statement, which he chose to do. The dispositional hearing transcript reflects as follows in relevant part:

[District Court] Mr. Robinson, you're not required to say anything, but you may say something on your behalf if you wish. Go ahead.

[Robinson] Your honor, I have participated in the classroom, and I have admitted to what I did in my classes.

\* \* \*

[District Court] Well, that's too much of a factual difference.

[Robinson] Sorry.

---

[3] The district court acknowledged that the truthfulness of answers given during the polygraph was irrelevant and what mattered was instead whether he showed up and took the test.

[District Court] He just said he's admitted --

[Robinson] Yes, I have.

[District Court] -- misconduct, sexual misconduct, sexual battery.

[Robinson] Yes, I have.

[¶17] The district court asked the State if what Robinson said was true. The prosecutor quickly investigated the claim, and informed the district court that "neither in treatment nor during the polygraph testing did Mr. Robinson make any admissions." The district court asked Robinson if he had anything further to say, to which Robinson said he could prove his admission during the classes. The district court responded, saying "Why don't you just admit to me right now, Mr. Robinson, so I know what you did, and so do they." Robinson admitted to his conduct, and again stated he made these admissions in his sex offender classes. He then tried to explain that he did not understand the polygraph process.

[¶18] The district court remarked that if he did not understand something about the process, he could have simply asked for clarification. In the end, the district court felt that Robinson had "sandbagged" from the time he entered the no contest plea, and that no further chances at probation were warranted.

[¶19] In sum, the district court concluded that Robinson had violated both the polygraph and employment conditions of his probation. Based upon these willful violations, and his unsuitability for supervision, Robinson's probation was revoked and the suspended sentences were imposed. He then timely perfected this appeal.

## DISCUSSION

[¶20] W.R.Cr.P. 39 governs probation revocation proceedings. We recently reaffirmed that

> [t]he proceedings for probation revocation consist of a two-part process. The first part, the adjudicatory phase, requires the district court to determine by a preponderance of the evidence whether a condition of probation was violated. The second, dispositional phase, is triggered only upon a finding that a condition of probation was violated. In this phase, the district court must deliberate not only upon the violation, but also the reasons the conditions were originally imposed and

8

the circumstances surrounding the violation. After consideration of all these factors, the district court must then determine the appropriate consequences of the probationer's violation. In addition to the requirements of W.R.Cr.P. 39, we have said that in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must either be willful or threaten the safety of society. The willfulness of a probationer's violation is addressed during the dispositional phase.

*Miller v. State*, 2015 WY 72, ¶ 8, 350 P.3d 742, 745 (Wyo. 2015) (citations and quotation marks omitted).

[¶21] Robinson argues that the district court erred in both the adjudicatory and dispositional phases of the probation revocation process. We will address his issues dealing with the adjudicatory hearing first, and then follow up with his complaint as to the dispositional phase.

***Determination of Probation Violation during the Adjudicative Phase***

[¶22] Robinson frames his first issue in such a way as to suggest that the district court's reason for finding a probation violation was based upon his failure to admit the sexually inappropriate conduct, in addition to his failure to take a polygraph. Robinson's version of the decision veers off course.

[¶23] As noted above, after carefully reviewing the record, we conclude that the district court determined by a preponderance of the evidence that two separate conditions of probation had been violated—Robinson failed to establish employment and did not take a polygraph. *See supra*, ¶14. The district court did not find that a condition of probation had been violated because of Robinson's failure to admit his conduct.

[¶24] This is not a situation, as Robinson suggests, like that in *Neidlinger v. State*, 2007 WY 204, 173 P.3d 376 (Wyo. 2007). There the defendant pled no contest to one count of indecent liberties with a minor. *Id. at* ¶ 3, 173 P.3d at 377. The probation conditions included requirements that the defendant participate in the intensive supervised probation program, submit to a sex offender evaluation and successfully complete a sex offender treatment program. *Id. at* ¶ 4, 173 P.3d at 377. During his probation, the defendant refused to admit any inappropriate sexual behavior to a sex offender therapist. As a result, the therapist would not provide sex offender treatment. *Id.* The State filed a petition to revoke Neidlinger's probation for failure to participate in sex offender treatment, and the district court revoked, reasoning that because he failed to admit any

sexual misconduct, the defendant effectively failed to comply with the requirement that he submit to a sex offender evaluation. *Id.* at ¶ 7, 173 P.3d at 378.

[¶25]  On appeal, we concluded that admission of criminal conduct was not a condition of probation, and that therefore the district court had abused its discretion. *Id.* at ¶ 11, 173 P.3d at 379.  We explained:

> . . . The probationary condition at issue simply required Neidlinger to "submit to and pay for a sex offender evaluation by a sex offender counselor approved of by the probation agent." While the district court certainly could have conditioned Neidlinger's probationary status on Neidlinger's admission of criminal conduct to the sex offender evaluator, it did not expressly do so. By requiring Neidlinger to admit criminal conduct as part of the evaluation, the district court extended the probationary condition beyond its express language.
>
> Further, there is no indication in the record that Neidlinger was ever advised he would have to admit to criminal conduct in order to fulfill that condition. As a matter of due process, a probationer must know and understand what is expected of him in order to maintain his probationary status. Otherwise, an alleged violation cannot be considered willful as required under law to justify a probation revocation.
>
> In this case, Neidlinger never admitted to the criminal conduct underlying his conviction. Under the circumstances, it is unreasonable to assume that Neidlinger would reverse course without express direction from the district court. Without such express direction, we believe Neidlinger could not have anticipated the district court's construction of the term "submit." Given the state of affairs, Neidlinger's failure to admit to criminal conduct cannot be considered a willful violation of a condition of probation.
>
> We find Neidlinger complied with the condition of probation that he submit to a sex offender evaluation. He met with Mueller, the probation officer's chosen sex offender counselor, on two separate occasions. Mueller testified at the revocation hearing that he completed a sex offender evaluation on Neidlinger. We understand the district court's frustration that the evaluation did not go as it envisioned, but

the evaluation was consistent with the requirements of Neidlinger's probation.

*Id.* at ¶¶ 11-14, 173 P.3d at 379 (citations omitted).

[¶26] The circumstances here are distinguishable. The express terms of Robinson's probation required him to submit to a polygraph and to also maintain employment. *See supra*, ¶5. All Robinson had to do was submit to the test. He did not have to admit to any of the conduct supporting the offenses to which he pled no contest, and he did not have to pass the polygraph.[4] *See Johnson v. State*, 6 P.3d 1261, 1263-64 (Wyo. 2000). Instead he failed to keep three testing appointments and produced no medical documentation to explain why he had failed to comply. Simply put, this situation is not similar to *Neidlinger*.[5]

[¶27] Requiring Robinson to take the polygraph was not a pointless exercise. As we noted in *Johnson*, although he was not required to test truthful on the examination, if he did so while denying misconduct, the probation agent would know that it was pointless to continue to encourage him to participate in sex offender therapy. On the other hand, if he failed, the agent would know that it was worthwhile to continue to encourage him to own up to his misconduct and engage in therapy.

[¶28] Robinson also failed to show that he was employed when all he had to do was provide documentation to his probation agent. By failing to do so, he also failed to confirm that he was gainfully employed and therefore in compliance with that condition of his probation.

[¶29] Adhering to our standard of review in cases dealing with probation revocation, *see Miller*, ¶ 10, 350 P.3d at 745, we find that the district court did not abuse its discretion in determining that revocation was warranted because Robinson had violated conditions of probation.

### Admission of Hearsay Evidence during the Adjudicative Phase

[¶30] Robinson also argues that the district court erred in admitting hearsay evidence during the adjudicative phase. Robinson contends that hearsay statements of the

---

[4] After oral argument, Robinson filed a *Notice of Additional Authority* pursuant to W.R.A.P. 7.04, bringing to the Court's attention the federal case of *United State v. Von Behren*, 822 F.3d 1139 (10th Cir. 2016). In *Von Behren*, the Tenth Circuit held that it was a violation of the defendant's Fifth Amendment privilege against self-incrimination when a condition of his supervised release required him to take a polygraph and answer specific questions about past sexual history that was not relevant to the actual charges pled to. There is no such requirement in this case, and *Von Behren* therefore is distinguishable.

[5] Indeed, even the district court fairly implied that *Neidlinger* would forbid a revocation based upon something not agreed to as an express term of probation. *See supra*, ¶14.

11

employee at the grocery store where he supposedly worked was the basis for the finding that he failed to maintain employment, and that his probation was improperly revoked because revocation cannot be based solely upon hearsay.[6]

[¶31] Because Robinson did not object to the hearsay, our review is for plain error. "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Young v. State*, 2016 WY 70, ¶ 13, 375 P.3d 792, 796 (Wyo. 2016) (citations omitted). This Court has explained that "[u]nder the plain error standard of review, we reverse a district court's decision only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." *Id.* at ¶ 14, 375 P.3d at 796. "Stated another way, plain error is a clear or obvious error that should have been readily apparent to the district judge, such that failure to object would not deprive the court of a reasonable opportunity to correct it." *Id.* (citations and quotation marks omitted).

[¶32] Robinson's complaint centers upon a small segment of Ms. Perryman's testimony during the adjudicative hearing. As we have noted, Ms. Perryman explained that after requesting and not receiving documentation from Robinson to confirm his employment, she went above and beyond to verify whether Robinson was indeed employed or not. She testified, without objection, that she called the grocery store where Robinson allegedly worked, and the human resources hiring manager informed her that no one by Robinson's name had ever been employed there. *See supra*, ¶13.

[¶33] The first prong of the plain error test is satisfied because the record clearly reflects Ms. Perryman's testimony about her conversation with the hiring manager at the grocery store. The second prong requires proof of a transgression of a clear and unequivocal rule of law. With regard to the use of hearsay evidence in the adjudicatory phase of the probation revocation process, the Wyoming Rules of Criminal Procedure provide:

> Hearing. – At the hearing upon the petition for revocation of probation, the state must establish the violation of the conditions of probation alleged in the petition by a preponderance of the evidence.
>
> (A) The probationer shall have the right to appear in person and by counsel, to confront and examine adverse witnesses, and at the dispositional stage to make a statement in mitigation of revocation.

---

[6] This claimed error would not address the other basis for revoking probation, that Robinson willfully failed to take a polygraph exam. This violation may have been sufficient if stood alone.

12

> (B) The Wyoming Rules of Evidence shall apply to the adjudicative phase of probation revocation hearings; however, hearsay that is probative, trustworthy and credible may be received into evidence. The Wyoming Rules of Evidence do not apply to the dispositional stage.

W.R.Cr.P 39(a)(5)(A)-(B).

[¶34]  Our longstanding case law on the matter is fairly consistent with the current rule, although part of our precedent needs updating to conform with rule changes.  In 1981, this Court explained that the law governing probation revocation is controlled by the Fourteenth Amendment right to due process, as well as by Wyoming statute and case law. *Mason v. State*, 631 P.2d 1051, 1055 (Wyo. 1981).  We relied on the United States Supreme Court's pronouncements that the Fourteenth Amendment requires a probationer be given a hearing before his probation may be revoked.  *Id.*  Although a probation revocation proceeding is not a criminal prosecution and thus does not give rise to the full panoply of rights available under the Sixth Amendment, it may nevertheless result in a loss of liberty and therefore triggers the fundamental protections of the due-process clause of the Fourteenth Amendment.  *Id.*  Consequently, due process requires that defendants in probation revocation cases be provided a two-part hearing.  The first part is to determine if there are facts proving a violation of probation conditions, and the second part is to determine whether in light of a proven violation the probation should be revoked. *Id.*  Regarding the use of hearsay evidence during such a proceeding, this Court reasoned:

> It is impossible for the defendant to test the accuracy and truth of the State's witnesses if they are not at the hearing to give their testimony. . . . Both the defendant and the social system have a stake in making sure the factual determination in a revocation hearing is not an arbitrary one but is based on facts which pass the *Morrissey*, truth-seeking test of cross-examination.  In this case the only evidence presented was in the form of hearsay which the defense was unable to test and verify. This was a clear violation of the appellant's right to due process. The State must make a good-faith attempt to produce the witnesses at a probation- or parole-revocation hearing or else show cause why they cannot appear. If for some valid reason a witness is unavailable, whether or not the information may be introduced through hearsay will be determined by the use of a balancing test. This test will weigh the defendant's interest in confronting and cross-examining the witnesses against him with the practical difficulties of producing the witness.

13

*Id.* at 1056 (citations omitted).

[¶35]   Ten years later, in *Swackhammer v. State*, we reaffirmed the pronouncements of *Mason* that there is a conditional right to confront witnesses adverse to the probationer, because that right is not as strong as it is in a criminal proceeding and therefore the admission of hearsay evidence without confrontation of witnesses is not categorically barred in revocation proceedings. 808 P.2d 219, 223 (Wyo. 1991).  This Court stated that "(1) probation revocation may not be based solely on the use of hearsay evidence; and (2) if hearsay evidence is admitted, the trial court must apply the indicated balancing test before receiving such evidence."  *Id.*[7]

[¶36]   When *Mason* and *Swackhammer* were decided, there was no Wyoming Rule of Criminal Procedure governing these evidentiary issues in probation revocation proceedings.  In 1992, however, the rules were amended and the following was added to W.R.Cr.P. 39(a)(5)(B): "The Wyoming Rules of Evidence shall apply to the adjudicative phase of probation revocation hearings, but not to the dispositional stage."  *See* W.R.Cr.P. June 1992 Revised Edition; *see also Order Amending Rules . . . 39 . . . Wyoming Rules of Criminal Procedure* dated July 22, 1993.

[¶37]   In the 1996 case of *Mapp v. State*, this Court again explained the two-part process for probation revocation, and went on to recap the pronouncements of our precedent:

> The process due a probationer at the adjudicatory stage is found in W.R.Cr.P. 39 and case law. This includes the right to disclosure of the evidence against the defendant, the right to call witnesses and present documentary evidence, and the conditional right to confront and cross-examine adverse witnesses. The determination of whether the defendant violated his release agreement must be based on verified facts.
>
> Thus, in *Mason*, and later in *Swackhammer*, we held that probation revocation may not be based solely on the use of hearsay evidence. In both cases, the hearsay evidence admitted by the district court directly affected the

---

[7] The State also had an argument based on *Swackhammer*. It contended that all that was required to support a revocation of probation was "the court's conscientious judgment, after hearing the evidence, that a violation of probation has occurred."  This is a direct quote from *Swackhammer*. 808 P.2d at 224. However, as discussed below, our rules of criminal procedure have been amended, and the version of Rule 39(a)(5) in effect now and at the time of these proceedings required the State to "establish the violation of the conditions of probation alleged in the petition by a preponderance of the evidence," which now sets our standard of review.

probationer's ability to confront witnesses at the adjudicatory stage of the proceeding. In these cases, we determined that before hearsay evidence is admitted at the adjudicatory stage, the court must conduct a balancing test to weigh the need of petitioner to confront the witness against the practical difficulty of producing the witness at the hearing.

*Mapp v. State*, 929 P.2d 1222, 1226 (Wyo. 1996) (citations and quotation marks omitted); *see also Gailey v. State*, 882 P.2d 888, 891 (Wyo. 1994).

[¶38]  In 2001, the current version of W.R.Cr.P. 39(a)(5), which we quoted above, was adopted. *See supra*, ¶33.  The current version changed the law, as the balancing test set out in *Mason* and *Swackhammer* was replaced with a test that allows hearsay that is probative, trustworthy and credible to be received.  While the rule that probation revocation may not be based solely on the use of hearsay remains, the test for admitting hearsay evidence has been altered.  Under the current Rule 39(a)(5)(B), if the proffered hearsay evidence is determined to be probative, trustworthy and credible, there is no need to conduct a good cause balancing test, as reliability constitutes good cause.  *See* 6 Wayne R. LaFave et al., *Criminal Procedure* § 26.10(c) (4th ed., updated Dec. 2015)).

[¶39]  Robinson did not object to the hearsay evidence, and as a result, the district court did not have an opportunity to expressly find whether it was probative, trustworthy and credible under W.R.Cr.P. 39(a)(5)(B).  In any event, although the district court may have relied to some extent upon the hearsay statement, there was also direct evidence of noncompliance.  As we have already described, *see supra,* ¶¶8-13, Ms. Perryman testified that Robinson failed to submit to a polygraph and also failed to confirm his employment after she requested him to do so.  This testimony was not hearsay, but was instead based upon her personal knowledge.[8]

[¶40] The district court did not transgress a clear and unequivocal rule of law. Consequently, Robinson cannot establish the second prong of the plain error test.

---

[8] We also point out the unfairness of a failure to object followed by a complaint on appeal that there was inadequate proof of the trustworthiness of a hearsay statement.  Robinson complains that the probation agent did not testify as to certain details, such as the name of the employee she spoke to, that person's title, etc.  We have no way of knowing what details the probation agent could have provided if there had been an objection.  This kind of unfairness has led other courts to refuse plain error review when there has been no objection to foundation of testimony later challenged on that basis on appeal.  *State v. Honsinger*, 386 S.W.3d 827, 829 (Mo. App. 2012) (court would not review for plain error when appellant did not object to qualifications of police officer to administer horizontal gaze nystagmus test); *People v. Sparks*, 780 N.E.2d 781, 784 (Ill. App. 2002) (court would not review admission of evidence that devices used to measure distances were accurate due to the lack of a foundation objection at trial).  However, we will leave this issue for another case.

*Declining to Reinstate Probation during the Dispositional Phase*

[¶41] In his final issue, Robinson says the district court erred by not reinstating his probation because he would not admit to improper conduct underlying the offenses to which he pled. Our review of the record again contradicts his claim.

[¶42] At the dispositional hearing, Robinson chose to exercise his right to make a statement in mitigation, although he did not have to do so. W.R.Cr.P. 39(a)(3)(B) (probationer is not required to make a statement, any statement he makes may be used against him); W.R.Cr.P. 39(a)(5)(A). When a defendant does choose to make a statement, he has the opportunity to make a misrepresentation. This is what the State claimed Robinson did – he misrepresented that he had admitted his conduct. *See supra*, ¶¶16-17. If the statement had been true, perhaps this could have been a mitigating factor which might have led the court to reinstate probation.

[¶43] After concluding that it had been lied to, the district court admonished Robinson for doing so, and found that he had amply demonstrated that he would not comply with his conditions of probation, and decided that imposing his suspended sentences was appropriate to protect the public. The State had proven that Robinson failed to take a polygraph, and at the very least had failed to show that he had maintained employment, if he had not in fact lied outright to the probation officer. Given a chance to apologize for or explain these failures, Robinson chose instead to tell what the judge concluded was a lie, which could not have helped his claim that he could be supervised. *See Edrington v. State*, 2008 WY 70, ¶ 7, 185 P.3d 1264, 1266-67 (Wyo. 2008).

[¶44] A determination to revoke probation and impose a sentence is discretionary, and this Court will not interfere with such a ruling unless the record shows a clear abuse of discretion. *Miller*, ¶ 10, 350 P.3d at 745. "Although the district court's decision must be based upon verified facts and the defendant must be afforded due process, all that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that the defendant willfully violated a condition of his probation." *Id.*

[¶45] The determination of whether a probationer's violation of a probation condition was willful is a question of fact, and we will uphold a district court's factual findings unless they are clearly erroneous. This Court has explained:

> Because the trial court heard and weighed the evidence, assessed witness credibility, and made the necessary inferences and deductions from the evidence, the trial court's factual findings are not disturbed on appeal unless they are clearly erroneous, and the evidence is viewed in the light most favorable to the trial court's determination.

16

*Miller*, ¶ 11, 350 P.3d at 745-46 (quoting *Robinson v. State*, 2003 WY 32, ¶ 15, 64 P.3d 743, 747-48 (Wyo. 2003)).

[¶46] Considering all the evidence in the light most favorable to the district court's decision, we cannot say that its determination that Robinson willfully violated his probation was clearly erroneous, or that it abused its discretion in revoking it.

[¶47] Affirmed.