KAUTZ, Justice.
[¶1] Caleb Dwight Bazzle appeals from the district court's order revoking his probation and imposing the original suspended sentence. We affirm.
ISSUES
[¶2] Mr. Bazzle presents the following issue on appeal:
To revoke probation, the State must prove that the probationer willfully violated the conditions of probation. During the adjudicatory stage of proceedings, after concluding that Mr. Bazzle had failed to prove that he had complied with the conditions of his probation and finding that his alleged violations were willful, the district court revoked his probation. Did the court err in its conclusions[ ] and were its findings supported by the evidence?
The State raises an additional issue:
A defendant's waiver of his appellate rights will be enforced unless the appellate issue is outside the scope of the waiver, the waiver was not knowing and voluntary, and enforcing the waiver would result in a miscarriage of justice. In his plea agreement, Bazzle agreed not to file "any ... appeals." Bazzle does not address his waiver.
*1093 Should this Court enforce the waiver and refuse to consider the issue he raises?
FACTS
[¶3] On December 15, 2015, the State charged Mr. Bazzle with five drug-related crimes-possession of marijuana (third offense); endangering children; and three counts of delivery of a controlled substance (buprenorphine). On February 2, 2016, the State and Mr. Bazzle entered into a plea agreement, memorialized in a document entitled "Statement of Agreement." Mr. Bazzle agreed to plead guilty to the first count-possession of marijuana (third offense), and the State agreed to dismiss the remaining charges. They jointly recommended to the district court that Mr. Bazzle receive a sentence of incarceration for three to five years, to be suspended in favor of five years of supervised probation. Under the terms of the agreement, Mr. Bazzle was required to "enroll in, and successfully complete, the Sublette County Treatment Court Program." Mr. Bazzle also agreed "not to file any post guilty plea/post-conviction motions, requests for sentence reduction, appeals or post-conviction relief petitions."
[¶4] The district court held a change of plea and sentencing hearing on June 27, 2016. The prosecutor outlined the terms of the plea agreement, specifically mentioning the requirement that Mr. Bazzle enroll in and successfully complete the Treatment Court Program and that he was waiving his right to appeal. The district court addressed Mr. Bazzle, as follows:
COURT: You would be required under this agreement to enroll in and successfully complete the Sublette County Treatment Court Program as a condition. Do you have any questions about that?
....
DEFENDANT: I do not, [Y]our Honor.
COURT: Implicit in that requirement is that you would enroll in and successfully complete in-patient treatment for substances, alcohol or both as recommended in the Presentence Investigation Report in order to get you to a level that the Sublette County Treatment Court Program would accept you. Do you have any questions about the treatment requirement that is implied under this Sublette County Treatment Court Program requirement?
DEFENDANT: I do not, [Y]our Honor.
[¶5] The district court accepted the plea agreement and Mr. Bazzle's guilty plea, imposed the recommended three to five year sentence, suspended the sentence, and placed him on supervised probation for five years. The Court Probation Terms and Conditions Order, filed June 28, 2016, stated in relevant part:
32) Defendant shall not own, transport, consume, inhale, ingest, use, possess, purchase, manufacture, sell, bargain, give away, receive, be under the influence of, handle, or engage in any other act that a person may be capable of doing regarding or in connection with, any controlled substances, illicit substances, toxic substances, medications ... or paraphernalia associated with such, unless prescribed by a licensed practitioner. In the event that a substance or medication has been prescribed to Defendant, Defendant shall strictly follow the terms of [the] prescription, including, but not limited to, taking only the dosage(s) and amount(s) prescribed strictly within the time(s) prescribed[.] (Defendant shall not over-medicate, under-medicate, take more frequently, or less frequently than strictly prescribed).
....
37) Defendant shall strictly follow and successfully complete ... any and all recommendations made in the Addiction Severity Index (ASI/ASAM)[.]
....
39) As directed by his Agent, Defendant shall enroll in and Defendant shall thereafter successfully complete ... an ASAM Level III.5 clinically managed high intensity residential treatment program or comparable treatment program approved by the probation agent, and ... attend any and all recommended after-care, relapse prevention, and/or recovery maintenance program(s)....
40) As directed by his Agent, Defendant shall apply for the Sublette County Treatment *1094 Court Program, or comparable treatment court program approved by the probation agent, and if accepted ... successfully complete said program. Defendant shall abide by any and all policies, rules, regulations, directives, or orders of the Treatment Court Program and strictly follow any and all directives of the Treatment Court team members.
[¶6] After he began serving his probation, Mr. Bazzle started using a prescription drug, buprenorphine, without telling his probation agent. Buprenorphine is a synthetic opioid that is used to treat opioid dependence. In August 2016, probation agent, Jeannie Whinnery, learned that Mr. Bazzle was using buprenorphine when he tested positive for the drug. Ms. Whinnery informed him that he could not participate in the Treatment Court Program if he was taking buprenorphine.
[¶7] Mr. Bazzle began residential drug treatment in November 2016 and was discharged, at his request, with "maximum benefits" on January 12, 2017. While in treatment, Jed Shay, M.D. switched Mr. Bazzle's medication to Suboxone, another synthetic opioid that contains buprenorphine and is used to treat opioid dependence. www.suboxone.com.
[¶8] On January 26, 2017, Kathy Anderson, the coordinator of the Sublette County Treatment Court, sent Mr. Bazzle a letter informing him that he would not be allowed to "commence participation in the Treatment Court until [he] titrate[d][1] off all opioid-type prescriptions, including but not limited to Buprenorphine, S[u]boxone, or any similar synthetic opioid." The letter acknowledged that Mr. Bazzle had provided the Treatment Court with a prescription from Dr. Shay, which stated that tapering off Suboxone should take six months. Ms. Anderson instructed Mr. Bazzle to provide a more detailed titration plan. She also stated that his acceptance in the Treatment Court Program would "remain open until July 12, 2017 (six (6) months from the date of the titration prescription sheet by Dr. Shay)," but that if he was still using any opioid or synthetic opioid prescription drug at that time, his "acceptance in the Treatment Court program [would] be revoked and [he would] be prohibited from participating in the program."
[¶9] On July 12, 2017, Ms. Anderson informed Ms. Whinnery that Mr. Bazzle would not be allowed to participate in the Treatment Court Program because he had not titrated off Suboxone. A few days later, the State filed a petition to revoke Mr. Bazzle's probation. The State alleged that Mr. Bazzle had violated the terms of his probation which required him to successfully complete residential drug treatment and the Treatment Court Program.
[¶10] Mr. Bazzle denied the State's allegations and filed a memorandum asserting that he had not willfully violated his probation. He argued that his dismissal from residential treatment was not willful, as evidenced by the fact he was awarded "maximum benefits." He also claimed that he had not willfully violated the probation condition that required him to complete the Sublette County Treatment Court Program. While Mr. Bazzle acknowledged he was still using Suboxone, he maintained his use was justified because his physicians recommended continuing the medication.
[¶11] The district court held an adjudicatory hearing on the State's petition to revoke Mr. Bazzle's probation on November 21, 2017. Ms. Anderson testified that Mr. Bazzle was discharged from residential drug treatment with maximum benefits in January 2017, but the Treatment Court did not consider that a successful completion of treatment. She also explained that the Treatment *1095 Court did not allow participants to use Suboxone because it was subject to abuse, can be used to "get high," and may be sold or distributed illegally. Ms. Anderson confirmed that she sent Mr. Bazzle the January 26, 2017, letter which informed him that he needed to stop using Suboxone and directed him to submit a detailed titration plan prepared by his healthcare provider. She testified that he had provided a handwritten titration plan in June 2017, but he did not follow the plan and was still using Suboxone. Therefore, he was not allowed to attend the Treatment Court Program.
[¶12] Brad Bell, a case manager at the residential treatment facility, testified that Mr. Bazzle did not complete the program and was "manipulative" and "resistant to treatment." Carol Mitchelson was the probation agent who supervised Mr. Bazzle while he attended residential drug treatment. She testified that patients typically attend the treatment program for four to six months, but Mr. Bazzle attended for only 58 days. Ms. Mitchelson described Mr. Bazzle as defensive, dishonest and manipulative with the staff.
[¶13] Ms. Whinnery testified that she had discussed Mr. Bazzle's probation conditions with him when he began serving his probation. She informed him that "he needed a successful discharge from [residential drug] treatment and that [a] maximum benefit [discharge] was not acceptable." She also explained that he could not use buprenorphine /Suboxone while in the Sublette County Treatment Court Program. He said he would taper off the drug over a six-month period in accordance with Dr. Shay's prescription, but he did not.
[¶14] After the State finished its presentation, Mr. Bazzle testified. He claimed that he was told a maximum benefits discharge amounted to "successful completion" of the program. Mr. Bazzle said that he had been prescribed Suboxone to help control his cravings for opioids and, according to his doctors, there was a "high" risk of relapse if he stopped taking the medication. He presented an unsigned note from Dr. Shay, dated March 1, 2017, which stated that Mr. Bazzle should continue to use Suboxone to manage his opioid dependence and reduce the possibility of relapse.
[¶15] On cross examination, Mr. Bazzle admitted he knew he was required to stop using Suboxone before he could enter the Treatment Court Program and conceded that he had never given Dr. Shay's March 2017 note to his probation agent or anyone in the Treatment Court Program. He knew he was supposed to submit a titration plan to the Treatment Court but claimed he had to "handwrite one [him]self" because none of his doctors would provide one. Mr. Bazzle admitted he had not followed the plan and was still using Suboxone.
[¶16] The district court ruled that Mr. Bazzle had violated the terms of his probation which required him to successfully complete residential drug treatment and the Sublette County Treatment Court Program. It also found the conditions were material and his violations were willful.
[¶17] The district court subsequently held two separate disposition hearings. At the first disposition hearing, on January 11, 2018, Mr. Bazzle stated that he had reapplied to the Treatment Court Program and was awaiting a decision on his application. He believed that he could now "get off the medication," although he was still using it at the time of the hearing. The district court expressed reservation about the chance of Mr. Bazzle being readmitted to the Treatment Court Program but decided to defer the disposition pending the program's decision. On January 18, 2018, the Sublette County Treatment Court denied Mr. Bazzle's application.
[¶18] On March 8, 2018, the district court held the final disposition hearing. Mr. Bazzle was still taking Suboxone and had been denied entry into the treatment court programs in Sublette, Sweetwater and Teton counties. The district court revoked his probation and imposed the suspended sentence. Mr. Bazzle filed a timely notice of appeal.
DISCUSSION
1. Waiver of Right to Appeal Probation Revocation
[¶19] The State asserts this Court should not consider Mr. Bazzle's appeal of his *1096 probation revocation because he waived his right to appeal in his plea agreement. This Court has adopted the Tenth Circuit's three-part test to determine whether a plea agreement waiver precludes an appeal in a given case. The test, which is meant to be applied by the appellate court, considers: " '(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice[.]' " Henry v. State, 2015 WY 156, ¶ 12, 362 P.3d 785, 789 (Wyo. 2015) (quoting United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004) (en banc) (per curiam)).
[¶20] We interpret plea agreements as a matter of law using contract principles. Schade v. State, 2002 WY 133, ¶ 5, 53 P.3d 551, 554 (Wyo. 2002). Under general contract law, "we read the contract as a whole to find the plain meaning of all the provisions[.]" Bear Peak Res., LLC v. Peak Powder River Res., LLC, 2017 WY 124, ¶ 17, 403 P.3d 1033, 1041 (Wyo. 2017) (citing Thornock v. PacifiCorp , 2016 WY 93, ¶ 13, 379 P.3d 175, 180 (Wyo. 2016) ). However, in criminal plea agreement cases, "ambiguities in a waiver of appellate rights are interpreted against the State." Henry , ¶ 13, 362 P.3d at 789 (citing Hahn, 359 F.3d at 1325, 1328 ). See also United States v. Lonjose, 663 F.3d 1292, 1297 (10th Cir. 2011) (waivers of appellate rights are to be construed narrowly).
[¶21] The Statement of Agreement signed by the prosecutor and Mr. Bazzle provided: "Because the recommended sentence in this case is based upon the foregoing consideration and Agreement, [Mr. Bazzle] hereby agrees not to file any post guilty plea/post-conviction motions, requests for sentence reduction, appeals or post-conviction relief petitions." The scope of Mr. Bazzle's appeal waiver is broad, prohibiting him from filing any post-guilty plea and post-conviction motions or appeals. The plain meaning of the term "any" in this context is "every" or "all." Webster's Third New Int'l Dictionary (2012). The agreement also refers to "appeals," in the plural form. However, considering the entire agreement, the focus of the waiver was to prohibit Mr. Bazzle from challenging his conviction or sentence on the original charge, either in a direct appeal or a post-guilty plea or post-conviction petition. The waiver does not mention an appeal from a future probation revocation.
[¶22] Mr. Bazzle's appellate waiver, therefore, could be read in different ways. The reference to "any ... appeals" could be interpreted as including appeals from the original conviction or from challenges to the conviction through any post-guilty plea or post-conviction motion, but not an appeal from a subsequent probation revocation. It could also mean, as the State advocates, any appeal whatsoever, including an appeal from a future probation revocation. As we stated above, any ambiguity in the scope of an appellate waiver is interpreted against the State. We could simply apply this rule and end our inquiry, but there are federal cases which provide additional guidance.
[¶23] In United States v. Porter, 905 F.3d 1175, 1178-80 (10th Cir. 2018), the Tenth Circuit ruled the general appeal waiver in Ms. Porter's plea agreement did not preclude her subsequent appeal of an order revoking her supervised release because she did not specifically waive that right. Id. Similarly, in United States v. Carruth, 528 F.3d 845, 846 (11th Cir. 2008), the Eleventh Circuit rejected "the government's argument that the appeal waiver in Carruth's original plea agreement extend[ed] to his later revocation of supervised release," because the plea agreement did not include specific language to that effect.
[¶24] The Tenth Circuit noted that revocation of supervised release involves certain procedural protections for the defendant and new factual findings by the district court. Porter, 905 F.3d at 1179. The same is true when a Wyoming district court revokes a defendant's probation. Although, as the State points out, probation revocation is an extension of the sentencing procedure, see generally , DeMillard v. State, 2013 WY 99, ¶ 19, 308 P.3d 825, 832 (Wyo. 2013), there is a specific procedure for revocation of probation and the district court issues a separate order reflecting its decision. See W.R.Cr.P. 39. The revocation procedure and the district court's *1097 factual findings and legal conclusions are subject to appellate challenge on grounds separate and distinct from the original proceeding. See, e.g., Brumme v. State, 2018 WY 115, 428 P.3d 436 (Wyo. 2018) ; Robinson v. State, 2016 WY 90, 378 P.3d 599 (Wyo. 2016).
[¶25] The appellate waiver in Mr. Bazzle's plea agreement does not contain language evidencing his intent to waive his right to appeal from a probation revocation decision. We decline the State's invitation to interpret Mr. Bazzle's waiver as applying to this appeal simply because the parties used the terms "any" and "appeals" in the appellate waiver. At most, the use of those terms creates an ambiguity, which is interpreted against the State and in favor of the defendant. Henry, ¶ 13, 362 P.3d at 789 ; Porter, 905 F.3d at 1179. Therefore, the scope of Mr. Bazzle's appellate waiver did not include his right to appeal from the order revoking his probation, so we will consider his appeal.[2]
2. Revocation Decision
a. General Law on Probation Revocation
[¶26] Probation revocation is governed by W.R.Cr.P. 39. Under Rule 39, "[t]he proceedings for probation revocation consist of a two-part process." Sinning v. State, 2007 WY 193, ¶ 9, 172 P.3d 388, 390 (Wyo. 2007) (quoting Mapp v. State, 929 P.2d 1222, 1226 (Wyo. 1996) ). The first part is the adjudicatory phase in which the State bears the burden of proving, by a preponderance of the evidence, that the defendant violated a condition of his probation. Id. ; Rule 39(a)(5). If the district court concludes the defendant violated a probation condition, it moves on to the second part of the revocation hearing - the dispositional phase. Id. In the dispositional phase, the district court must consider the violation, the reasons the condition was originally imposed, and the circumstances surrounding the violation in determining the appropriate consequences for the defendant's violation. Id.
In addition to the requirements of W.R.Cr.P. 39, we have said that in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must either be willful or threaten the safety of society. The willfulness of a probationer's violation is addressed during the dispositional phase.
Robinson, ¶ 20, 378 P.3d at 606 (quoting Miller v. State , 2015 WY 72, ¶ 8, 350 P.3d 742, 745 (Wyo. 2015) ) (other citations omitted). See also Crouse v. State, 2017 WY 133, ¶ 10, 405 P.3d 216, 219 (Wyo. 2017).
b. Procedural Claims
[¶27] Mr. Bazzle claims the district court employed improper procedures in revoking his probation. Specifically, Mr. Bazzle asserts the district court erred by: 1) assigning him the burden of proving he did not violate the conditions of his probation; and 2) analyzing whether he had willfully violated the terms of his probation during the adjudicatory phase of the revocation proceeding.
[¶28] Mr. Bazzle did not raise either of his claims in the district court. Therefore, the plain error standard applies. See, e.g ., Robinson, ¶ 31, 378 P.3d at 608 (reviewing claim that district court erred by admitting hearsay evidence during the adjudicatory phase for plain error because the defendant did not object at the hearing); Shaw v. State, 998 P.2d 965, 967-68 (Wyo. 2000) (ruling that the failure to serve defendant with the petition to revoke probation amounted to plain error); Daves v. State, 2011 WY 47, ¶ 20, 249 P.3d 250, 257 (Wyo. 2011) (applying plain error standard to claim that the district court committed a procedural error). Under plain error review, the defendant must establish: 1) the record clearly shows the incident alleged as error; 2) the district court transgressed a clear and unequivocal rule of law; and 3) the defendant was denied a substantial right resulting in material prejudice. Johns v. State , 2018 WY 16, ¶ 12, 409 P.3d 1260, 1264 (Wyo. 2018) (citing Schmuck v. State , 2017 WY 140, ¶ 32, 406 P.3d 286, 297 (Wyo. 2017) and Collins v. State , 2015 WY 92, ¶ 10, 354 P.3d 55, 57 (Wyo. 2015) ).
*1098 [¶29] Mr. Bazzle claims the district court placed the burden on him to prove he did not violate the conditions of his probation when it made the following statement during the adjudicatory hearing:
The last thing that I wanted to hear on a probation revocation is a mini[-]trial about what happened or didn't happen at the [t]reatment [p]rogram[.] I only cared about one of two things, the Defendant is successful or he is not successful. It has not been shown to me that the Defendant successfully completed the treatment program that was ordered by the [c]ourt, and I don't believe that's the State's burden[.] [I]t's the Defendant's burden in order to maintain the privilege of his probation.
The statement is clear in the record, so we turn to the question of whether the district court violated a clear and unequivocal rule of law.
[¶30] As we stated above, the law clearly and unequivocally imposes upon the State the burden of proving the defendant violated the conditions of his probation. Rule 39(a)(5). To determine whether the district court violated this rule, we must view the cited passage in context. Immediately prior to the statement, the district court read into the record the probation condition that required Mr. Bazzle to successfully complete residential drug treatment. Immediately after the statement, it read the probation condition that required him to successfully complete the Treatment Court Program. When the statement is read within this context, it is clear the district court was explaining what the probation term required (successful completion of treatment) and that it was Mr. Bazzle's responsibility to comply with that term "in order to maintain the privilege of probation." The district court was not saying Mr. Bazzle had the burden of proof at the probation revocation hearing.
[¶31] Furthermore, other parts of the record demonstrate that the district court charged the State with the burden of proving Mr. Bazzle violated the probation conditions. At his initial appearance, the district court informed Mr. Bazzle: "The State must prove that you violated terms and conditions of your probation by ... a preponderance of the evidence." At the adjudicatory hearing, the State presented its witnesses first. Once the State finished its presentation, Mr. Bazzle testified. The State followed with rebuttal testimony. The order of the presentations indicates that the district court properly placed the burden of proof upon the State. See Ketcham v. State, 618 P.2d 1356, 1362 (Wyo. 1980) (although the probation revocation proceeding was initiated with an order to show cause presumably directing the defendant to demonstrate that he had not violated the terms of his probation, the organization of the hearing clearly showed that the district court assigned the burden of proof to the state). The record shows the district court did not violate a clear and unequivocal rule of law as it did not shift the burden of proof to Mr. Bazzle.
[¶32] Mr. Bazzle's second challenge to the procedure employed by the district court is that it improperly found his probation violations were willful during the adjudicatory phase of the revocation proceeding. The record confirms the district court determined, during the adjudicatory phase, that Mr. Bazzle's violations of the probation conditions were willful. The district court verbally announced that finding during the November 21, 2017 adjudicatory hearing. It also issued an Order Upon Probation Revocation Adjudicatory Hearing which stated that "the Defendant willfully violated the terms and conditions of his probation ... [and] the conditions of probation which were willfully violated by Defendant were material violations [that] did not involve the payment of money."
[¶33] We have consistently stated that the determination of whether the defendant willfully violated the conditions of his probation should be made during the dispositional phase. Brumme, ¶ 12, 428 P.3d at 441 ; Robinson , ¶ 20, 378 P.3d at 606. The district court, therefore, erred by making its willfulness finding during the adjudicatory phase. However, Mr. Bazzle must show that he was denied a substantial right resulting in material prejudice before we will reverse the district court's order revoking his probation. Johns, ¶ 12, 409 P.3d at 1264.
*1099 [¶34] Mr. Bazzle claims in "finding that his alleged failures to comply were willful during [the] first stage of [the] proceedings, the court in effect took from him the opportunity to present mitigation evidence" and the district court "did not appear to truly consider the materials Mr. Bazzle presented during the dispositional stage of [the] proceedings." The record does not support his contentions.
[¶35] Mr. Bazzle submitted a memorandum to the district court prior to the adjudicatory hearing, focusing entirely upon his lack of willfulness. The district court acknowledged receiving the memorandum at the beginning of the hearing. Mr. Bazzle, therefore, addressed willfulness prior to the district court's finding. Furthermore, after finding Mr. Bazzle's violations were willful, the district court held two dispositional hearings. At those hearings, Mr. Bazzle addressed the court and offered evidence regarding the reasons for his actions and the proper disposition of his case. The court obviously took into account his presentation during the first hearing because it deferred disposition of his case for three months-from January until March 2018, to give him "[o]ne more chance" to qualify for and be admitted into the Treatment Court Program. Even after learning that Mr. Bazzle did not get into the program, the district court heard considerable evidence and argument at the second dispositional hearing about why he continued to take the Suboxone and why his actions should not result in imposition of the underlying sentence. The district court discussed the evidence in announcing its disposition decision. Although the district court should not have determined that Mr. Bazzle's probation violations were willful during the adjudicatory phase of the revocation proceeding, the record does not demonstrate that he was materially prejudiced by its premature conclusion.
c. Sufficiency of the Evidence to Support the District Court's Findings that Mr. Bazzle Willfully Violated his Probation
[¶36] In his final argument, Mr. Bazzle asserts the district court improperly concluded that he willfully violated his probation conditions. As we explained recently in Brumme , ¶ 11, 428 P.3d at 441,
[w]e review probation revocation proceedings under an abuse of discretion standard. Forbes v. State , 2009 WY 146, ¶ 6, 220 P.3d 510, 512 (Wyo. 2009) (citation omitted). "A district court's decision to revoke probation and impose a sentence is discretionary and will not be disturbed unless the record demonstrates a clear abuse of discretion." Id. ¶ 6, 220 P.3d at 512-13 (citation omitted).
Although the district court's decision must be based upon verified facts and the defendant must be afforded due process, all that is necessary to uphold a district court's decision to revoke probation is evidence that it made a conscientious judgment, after hearing the facts, that the defendant willfully violated a condition of his probation.
Miller v. State , 2015 WY 72, ¶ 10, 350 P.3d 742, 745 (Wyo. 2015) (citations omitted). We view the evidence in the light most favorable to the district court's determination and uphold its factual findings unless they are clearly erroneous "[b]ecause the trial court heard and weighed the evidence, assessed witness credibility, and made the necessary inferences and deductions from the evidence...." Id. ¶ 11, 350 P.3d at 746 (citations omitted)[.]
(emphasis omitted).
[¶37] The determination of whether a probation violation was willful is a question of fact. Id., ¶ 23, 428 P.3d at 444. "For purposes of probation revocation, 'willful' means 'intentionally, knowingly, purposely, voluntarily, consciously, deliberately, and without justifiable excuse, as distinguished from carelessly, inadvertently, accidentally, negligently, heedlessly or thoughtlessly.' " Id. (quoting Forbes, ¶ 8, 220 P.3d at 513 ).
[¶38] The district court found that Mr. Bazzle had willfully violated the condition of his probation which required him to successfully complete residential drug treatment. Mr. Bazzle enrolled in a residential drug treatment program, but he voluntarily left the program 58 days later and was given a maximum benefits discharge. Ms. Mitchelson testified that the standard duration of that *1100 treatment program was four to six months. So, Mr. Bazzle stayed in residential drug treatment for less than half of the standard time.
[¶39] Probation agent Whinnery testified that she explained to Mr. Bazzle before he began the program that "he needed a successful discharge from treatment and that maximum benefit was not acceptable." Ms. Anderson testified that a maximum benefits discharge can be given to a person "who is very resistant to change the way [he] think[s], to recovery, and refuses to engage in [his] full recovery process." Mr. Bazzle was defensive and manipulative in treatment, and he was given the option "to either continue in the program and begin engaging in his program or be max benefitted from the program and he chose to max benefit."
[¶40] Mr. Bazzle testified a staff member told him that a maximum benefits discharge was a successful completion of the program and he was given a certificate "awarding" him maximum benefits. He argues that, given the inconsistent information about the effect of a maximum benefits discharge, his violation could not be considered willful under the rationale of Neidlinger v. State, 2007 WY 204, 173 P.3d 376 (Wyo. 2007). Mr. Neidlinger was placed on probation after he pleaded no contest to one count of taking indecent liberties with a minor. Id., ¶¶ 3-4, 173 P.3d at 377. The probation conditions required him to submit to a sex offender evaluation and successfully complete a sex offender treatment program. Id., ¶ 4, 173 P.3d at 377. The district court revoked Mr. Neidlinger's probation because he refused to admit his criminal conduct during the evaluation. Id., ¶¶ 5-7, 173 P.3d at 377-78. The question presented on appeal was "whether [Mr.] Neidlinger was required to admit his criminal sexual conduct in order to comply with the probation requirement that he submit to a sex offender evaluation." Id., ¶ 10, 173 P.3d at 378. We reversed the order revoking his probation because the terms of Mr. Neidlinger's probation did not sufficiently inform him that he would be required to admit his criminal conduct as part of the evaluation process. Id., ¶¶ 11-12, 173 P.3d at 379. We said "[a]s a matter of due process, a probationer must know and understand what is expected of him in order to maintain his probationary status. Otherwise, an alleged violation cannot be considered willful as required under law to justify a probation revocation." Id., ¶ 12, 173 P.3d at 379.
[¶41] Mr. Bazzle's situation is much different than Mr. Neidlinger's. Mr. Bazzle's probation order clearly stated that he was required to successfully complete residential drug treatment and he was informed, prior to starting residential treatment, that a maximum benefits discharge was not successful completion of the program. On the day he was discharged, Mr. Bazzle was given the option to stay and engage in the program or accept a maximum benefit discharge. He chose the latter and was discharged after completing less than half the standard time for residential treatment. The district court flatly stated it did not believe Mr. Bazzle's testimony that he thought a maximum benefits discharge was successful completion of residential treatment. We defer to the district court's findings of credibility. Brumme, ¶ 11, 428 P.3d at 441. The evidence clearly demonstrates that, unlike Mr. Neidlinger, Mr. Bazzle understood that a maximum benefits discharge was not a satisfactory completion of treatment, but he intentionally and voluntarily chose the "maximum benefits" discharge instead of staying and engaging in the treatment program. The district court's finding that Mr. Bazzle willfully violated the residential treatment condition of his probation is supported by the evidence.
[¶42] The district court also found that Mr. Bazzle willfully violated the condition of his probation that required him to successfully complete the Treatment Court Program. Before he was sentenced, Mr. Bazzle was notified that he was eligible for Treatment Court. Ms. Whinnery met with Mr. Bazzle when he began serving his probation to discuss his probation conditions. She told him that he could not take buprenorphine while in the Treatment Court Program. She became aware that he was using buprenorphine after he tested positive for the substance. He had not informed her about his use of the drug and when confronted about the positive tests, he "denied at first." Eventually, he *1101 admitted to using buprenorphine for back pain and said he had obtained the drug using an old prescription. During his residential drug treatment, he switched to Suboxone, which contains buprenorphine.
[¶43] Ms. Anderson stated that participants in the Treatment Court Program were not allowed to use Suboxone because
it is a drug that can be abused, it's also a drug that is sold or distributed illegally.... A lot of people actually ... get high from taking it as a replacement rather than helping them come off of the opioid addiction and they end up addicted to it as well.
[¶44] Ms. Anderson informed Mr. Bazzle in the January 26, 2017 letter that he must stop using Suboxone before he could start the Treatment Court Program. She said his acceptance to the program would remain open for six months (until July 12, 2017) so that he could taper off the drug in accordance with Dr. Shay's prescription. Ms. Anderson specifically informed him in the letter that, if he did not stop using the drug by then, his acceptance would be revoked. Ms. Anderson also directed him to submit a more detailed titration plan from a healthcare provider.
[¶45] Mr. Bazzle did not provide a titration plan prepared by a healthcare provider. Instead, in June 2017, he provided a plan he had handwritten showing that he intended to wean himself off the drug over a period of three and a half weeks. On July 12, 2017, Ms. Anderson sent a letter to Ms. Whinnery stating that Mr. Bazzle had not titrated off Suboxone and, therefore, could not enter the Treatment Court Program. That letter prompted the State to file the petition to revoke his probation.
[¶46] Mr. Bazzle claims this evidence was insufficient to show that he willfully failed to complete the Treatment Court Program. There is no dispute that he did not begin, much less complete, the program. However, Mr. Bazzle asserts that his failure to comply with the probation condition was not willful and should have been excused.
[¶47] Mr. Bazzle maintains that he could not submit a sufficient titration plan to the Treatment Court because his doctors would not provide one. His focus on the difficulties he had in obtaining a titration plan misses the point. His probation conditions required him to successfully complete the Treatment Court Program. He was refused entry into the program, not because he did not have a sufficient titration plan, but because he continued to take Suboxone. While he was directed to provide a sufficient titration plan, the objective was for him to quit taking the prohibited drug. Because he did not cease taking Suboxone, he was not allowed to participate in the Treatment Court Program, which violated the conditions of his probation.
[¶48] Mr. Bazzle also argues that he was placed in an impossible situation by the terms of his probation. As we have discussed, one condition required him to complete the Treatment Court Program. Another condition stated:
In the event that a substance or medication has been prescribed to Defendant, Defendant shall strictly follow the terms of [the] prescription, including, but not limited to, taking only the dosage(s) and amount(s) prescribed strictly within the time(s) prescribed[.] (Defendant shall not over-medicate, under-medicate, take more frequently, or less frequently than strictly prescribed).
Mr. Bazzle claims that, if he had ceased using Suboxone, he would have violated the probation condition that required him to take his prescribed medications. That is not true. Dr. Shay wrote a prescription in January 2017 for Mr. Bazzle to taper off Suboxone over a six-month period. Had he done that, he could have complied with both probation conditions.[3]
[¶49] Mr. Bazzle also asserts that the Treatment Court should not have required him to cease using Suboxone as a condition of participating in the program. He directs us *1102 to a letter from Brent Blue, M.D., that he submitted to the district court prior to the second disposition hearing. Dr. Blue said he had been treating Mr. Bazzle since 2013 and recommended that he continue taking buprenorphine/Suboxone to reduce the cravings associated with opioid addiction and help prevent relapse. Dr. Blue's letter was appended to a letter written by Mr. Bazzle's attorney to the Treatment Court asking it to "reconsider [its] policy of whether use of Medication Assisted Treatment should prohibit a person from enrolling in [T]reatment [C]ourt."
[¶50] Regardless of the medical opinion about whether Mr. Bazzle should or should not be taking Suboxone, he was still obligated to comply with his court-ordered probation conditions. A defendant cannot unilaterally determine that he is "the arbiter of which of the terms of his probation required his obedience and which of those terms might be excused[.]" Johnson v. State, 6 P.3d 1261, 1263 (Wyo. 2000). See also, Leyba v. State, 882 P.2d 863, 865 (Wyo. 1994) (stating a defendant is not entitled to "take the law into his own hands and defy the conditions of his probation[.]"). If he cannot abide by the terms of his probation, the defendant should petition the district court for modification of the terms. Leyba, 882 P.2d at 865.
[¶51] Mr. Bazzle was obligated, under the probation order, to successfully complete the Treatment Court Program. He was aware that he could not participate in the program until he ceased using Suboxone. If he was unable or unwilling to comply with the probation condition, he was required to petition the district court for modification rather than make the unilateral choice not to comply. The district court's conclusion that Mr. Bazzle willfully violated the term of his probation that required him to successfully complete the Treatment Court Program is supported by the evidence.
[¶52] The district court did not abuse its discretion by revoking Mr. Bazzle's probation.
[¶53] Affirmed.

The parties, various witnesses, and the district court used the terms "titrate" or "titration" to describe the process of weaning Mr. Bazzle off buprenorphine or Suboxone. Technically, titration refers to the process of determining the dosage of medication that reduces the patient's symptoms to the greatest degree with the least amount of side effects. See, e.g. , https://www.verywellmind.com/what-does-titration-of-medication-mean-20899; https://www.webmd.com/add-adhd/guide/adhd-medication-titration. The more correct term for gradually ceasing use of a drug altogether is tapering. See, e.g ., https://www.mayoclinic.org/diseases-conditions/prescription-drug-abuse/in-depth/tapering-off-opioids-when-and-how/art-20386036. Regardless of the nomenclature, it is clear those involved in this case were describing Mr. Bazzle's complete cessation of the drugs.

This opinion should not be interpreted as a decision on the validity of any particular waiver of the right to appeal a future probation revocation.

The district court gave little weight to Dr. Shay's unsigned March 1, 2017 note that said Mr. Bazzle should remain on Suboxone. The note contradicted Dr. Shay's earlier prescription, and there was no explanation of why the doctor had changed his mind. Under our standard of review, we accept the district court's assessment of the weight of the evidence. See Brumme, ¶ 11, 428 P.3d at 441.