# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 11

**OCTOBER TERM, A.D. 2025**

**January 22, 2026**

JEREMY S. VELASQUEZ,

Appellant
(Defendant),

v.

S-25-0114

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Goshen County*
*The Honorable Edward A. Buchanan, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Brandon T. Booth, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Assistant Appellate Counsel. Argument by Mr. Meerkreebs.

*Representing Appellee:*
> Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by Mr. Woykovsky.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ., and CAUSEY, D.J.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**CAUSEY, District Judge.**

[¶1]    When the State filed its third petition to revoke probation against Appellant, Jeremy Velasquez, the district court set the matter for an adjudicatory hearing in which both parties presented evidence and argument concerning the alleged violations.  After a brief recess, the court found the State proved the violations of probation by a preponderance of the evidence.  Without further evidence or argument, the court proceeded to find the violations were willful, to revoke probation, and to impose the term of imprisonment previously set.

[¶2]    On appeal, Mr. Velasquez contends the district court committed plain error by finding willfulness, revoking probation, and imposing sentence without first conducting a disposition hearing or affording him the opportunity to otherwise address the court. Finding plain error, we reverse and remand the matter to the district court to address procedural deficiencies in the disposition phase of Mr. Velasquez's revocation proceeding.

## *ISSUE*

[¶3]    The issue on appeal is whether the district court committed plain error when, following the adjudication phase in a probation revocation matter, it found willfulness, revoked probation, and imposed the underlying sentence without conducting the dispositional phase of proceedings.

## *FACTS*

[¶4]    In July 2020, the State charged Mr. Velasquez with one count of interference with a peace officer, a felony, in violation of Wyo. Stat. Ann. § 6-5-204(b).  Over a year later, in October 2021, Mr. Velasquez pled guilty to that charge.  In exchange for the plea, the State agreed that while both parties would be free to argue what term of imprisonment the court should set, it would jointly recommend with the defense that Mr. Velasquez should be given a term of supervised probation in lieu of any imposed sentence.  On January 6, 2022, the district court sentenced Mr. Velasquez to five to eight years in prison, suspended in favor of three years of supervised probation.

[¶5]    Just a month after sentencing, the State first petitioned the district court to revoke Mr. Velasquez's probation because he had yelled at and threatened workers with the Wyoming Department of Family Services (DFS) in an unrelated case, encountered law enforcement officers after yelling at and threatening those DFS workers, and then failed to report his contact with the officers to his probation agent.  On February 22, 2022, Mr. Velasquez appeared before the district court, waived his various rights, and admitted to being charged with breach of peace because of his actions.  The court revoked and reinstated probation with the same general terms and conditions, and it credited him with the short amount of additional time he had served in detention.

1

[¶6]   A little more than a year later, the State once again petitioned the district court to revoke probation, this time because Mr. Velasquez admitted to his probation agent that he had used alcohol and methamphetamine in late February 2023.  At the revocation hearing on March 27, 2023, Mr. Velasquez appeared with counsel, and he admitted to drinking and using methamphetamine after purportedly being asked by DFS to relinquish custody of his children.  Upon his admission to the violations, the court suggested the parties proceed to disposition, and neither party objected; rather, each presented their respective positions.

[¶7]   Defense counsel argued first, stating that Mr. Velasquez's violation of probation primarily stemmed from emotional distress from a separate case involving DFS.  He requested a chance for his client to attend substance abuse and mental health treatment while continuing probation, but he also offered that the court could consider ordering a split sentence until Mr. Velasquez had been accepted into treatment if some period of incarceration was deemed appropriate.  The State responded by asserting that Mr. Velasquez was a capable and intelligent person who simply refused to comply with various directives; nevertheless, it ultimately deferred to the court's judgment.  For his part, the probation agent stated that he had concerns with Mr. Velasquez remaining in the community, and he no longer felt Mr. Velasquez should be on probation.

[¶8]   The court also heard from three mitigation witnesses presented by the defense—Mr. Velasquez's mother, his wife, and his pastor—as well as from Mr. Velasquez himself.  Among other things, Mr. Velasquez asked the court for a 90-day split sentence instead of any prison time, as well as for the opportunity to finish the substance abuse treatment he had started.  He further stated he would waive his rights and allow the court to impose the maximum sentence should he fall short again.

[¶9]   After observing that many of the things the court heard that day from the defense were echoes of things said at the first revocation proceeding, the court found that Mr. Velasquez's violations were willful, and it reimposed the original 5–8 year sentence.  Even so, the court suspended the prison sentence in favor of a one-year split sentence in the county jail followed by three years of supervised probation, and it informed Mr. Velasquez that upon a motion for sentence reduction, it would consider allowing him to return to probation sooner to attend a dual-diagnosis treatment program.  The court also told Mr. Velasquez that if he did "one thing wrong" it would send him to prison.

[¶10]  On May 31, 2023, Mr. Velasquez moved the district court to reduce his sentence so he could attend treatment.  On June 1, 2023, the court granted his motion and suspended the remainder of his split sentence for that purpose.

[¶11]  Over a year later, on November 14, 2024, the State filed its third petition to revoke probation, which alleged that Mr. Velasquez had tested presumptively positive for controlled substances and had refused to work with DFS in his ongoing case with that agency.  On December 4, the State filed an amended petition to add that Mr. Velasquez

had failed to report for an office visit as directed by his probation agent on March 12, 2024—which everyone later learned was actually *November* 12, 2024—and "failed to progress reasonably in substance abuse treatment." Mr. Velasquez was arrested on January 16, 2025, and appeared before the court on these allegations five days later. He denied the allegations, requested counsel, and asked to be released on bail. After hearing from the State and the probation agent, the court stated it would appoint counsel, deny bail, and set the matter for hearing.

[¶12] Counsel for Mr. Velasquez formally entered his appearance in the case on January 28, 2025, and counsel requested that the district court continue the hearing to give him time to prepare. The court granted the request. Counsel also requested that at least one of the defense's mitigating witnesses—Mr. Velasquez's mother—be permitted to attend electronically because she was caring for her daughter in Colorado. The court granted that request as well.

[¶13] On February 11, 2025, the parties first appeared before the district court to begin the adjudicatory hearing. Because the court was unable to hear all the argument and testimony from both parties at that time, it continued the hearing to February 13. Ultimately, to prove its contentions that Mr. Velasquez had failed to abide by the terms and conditions of his probation during these hearings, the State presented two witnesses: Mr. Velasquez's probation agent and his DFS caseworker. To counter the State's case, the defense called just one fact witness, Mr. Velasquez's wife.

[¶14] During their closing arguments, both counsel focused on whether the proof of the violations was sufficient. The State argued the evidence established that Mr. Velasquez violated probation by using methamphetamine before his meeting with his DFS caseworker, missing an appointment with his probation agent on November 12, 2024, and not completing all the follow-up to his substance abuse treatment that he had been granted a sentence reduction to complete. The defense asserted that the State had not proven that Mr. Velasquez's admitted use of methamphetamine was "related to his actual probation terms or what specific term . . . [was] violated[,]" that the missed meeting on November 12 was rescheduled and then attended, and that the State did not present sufficient evidence to establish that Mr. Velasquez had not "reasonably progressed in treatment."

[¶15] After the district court heard the attorneys' arguments, it took a brief recess. When it returned, it pronounced its rulings. Although the State had presented some evidence and argument that Mr. Velasquez had absconded from probation for a time shortly before the State filed the third petition to revoke, the court struck that evidence and argument because Mr. Velasquez had never been properly arraigned on the allegation. Next, regarding the allegations that were properly filed and the court had discussed with Mr. Velasquez at his initial appearance, the court found both that the State had proven those allegations and that the violations were willful. The court then recalled the transcript of the March 27, 2023 disposition hearing and reminded Mr. Velasquez that he had told the court it should just

"send [him] to prison" should he fail and that the court had told him it "will hold [him] to" his promises should he return. Finally, the court stated it felt it had little choice but to order Mr. Velasquez to serve his sentence as previously set, and it advised him of his right to appeal before asking both counsel whether there was anything else to address.

[¶16]   Neither Mr. Velasquez nor his counsel interrupted the district court as it pronounced its rulings, nor did they raise any concern with the court when it inquired if there was anything else to address at the conclusion of its pronouncement.  On March 4, 2025, the court entered its Order Revoking Probation.  This appeal timely followed.

## STANDARD OF REVIEW

[¶17]   As Mr. Velasquez acknowledges on appeal, because he did not formally object to the way the district court proceeded or its ruling at the time it was pronounced, his claim must be reviewed for plain error.  *See Villafana v. State*, 2022 WY 130, ¶ 28, 519 P.3d 300, 308 (Wyo. 2022) (citing *Jewkes v. State*, 2022 WY 90, ¶ 7, 513 P.3d 154, 158 (Wyo. 2022)).  Under plain error review, an appellant must establish: "1) the record clearly shows the incident alleged as error; 2) the district court transgressed a clear and unequivocal rule of law; and 3) the [appellant] was denied a substantial right resulting in material prejudice." *Bazzle v. State*, 2019 WY 18, ¶ 28, 434 P.3d 1090, 1097 (Wyo. 2019) (citations omitted).

[¶18]   For the purposes of determining whether plain error has been shown, "[m]aterial prejudice means a reasonable probability exists that the result would have been more favorable in the absence of the alleged error."  *Bruce v. State*, 2015 WY 46, ¶ 71, 346 P.3d 909, 930 (Wyo. 2015) (citation omitted).  As this Court has further stated concerning material prejudice in criminal sentencing matters:

> "[T]he public legitimacy of our justice system relies on procedures that are 'neutral, accurate, consistent, trustworthy, and fair,' and that 'provide opportunities for error correction.'" *Rosales-Mireles*[ *v. United States*], 585 U.S. [129, 141], 138 S.Ct. [1897,] 1908[, 201 L.Ed.2d 376 (2018)] (quoting Josh Bowers & Paul Robinson, *Perceptions of Fairness and Justice: The Shared Aims and Occasional Conflicts of Legitimacy and Moral Credibility*, 47 Wake Forest L. Rev. 211, 215–16 (2012)).
>
> When evaluating prejudice, we consider whether the errors undermine the fairness and integrity of judicial proceedings.  "We reverse a conviction only when the accumulated effect of the errors 'constitutes prejudice and the conduct of the trial is other than fair and impartial.'" *Black v. State*, 2017 WY 135, ¶ 46, 405 P.3d 1045, 1060 (Wyo. 2017)

(quoting *Watts v. State*, 2016 WY 40, ¶ 23, 370 P.3d 104, 112 (Wyo. 2016)).

*Jewkes*, ¶¶ 27–28, 513 P.3d at 162.

## *DISCUSSION*

[¶19]   In this case, the record shows precisely what the parties submitted and argued and how the district court proceeded in ruling.  Both parties contend the record is clear and unequivocal, and this Court agrees the first prong of the plain error test has been met.  Accordingly, we will focus our analysis on the two remaining prongs.

[¶20]   The second prong of the plain error test requires a finding that the court below transgressed a clear and unequivocal rule of law.  Since 1981, this Court has acknowledged that "[d]ue process requires that the defendant in revocation cases be given a two-part hearing to determine if (1) there are verified facts proving a violation of the release agreement; and (2) whether in light of a proven violation the probation should be revoked." *Mason v. State*, 631 P.2d 1051, 1055 (Wyo. 1981) (*superseded by rule on other grounds as stated in Robinson v. State*, 2016 WY 90, ¶ 38, 378 P.3d 599, 609–10 (Wyo. 2016)).  At the time *Mason* was decided, the Wyoming Rules of Criminal Procedure did not fully address how these different parts should be conducted, including from an evidentiary perspective, but since then, both the rules and the case law have offered substantial guidance.

[¶21]   More specifically, each probation revocation proceeding is now governed by Rule 39 of the Wyoming Rules of Criminal Procedure.  Under that rule, a revocation proceeding still consists of two parts (sometimes referred to as "phases" or "stages").  The first is the adjudicatory phase where the State must prove, by a preponderance of the evidence and in general compliance with the Wyoming Rules of Evidence, that the defendant violated one or more terms or conditions of probation.  *See* W.R.Cr.P. 39(a)(5).  If the district court reaches that conclusion, it then moves to the second—or dispositional—stage.  *See id.*  In the dispositional stage, the court must consider the violation, the reasons the violated term or condition was originally imposed, and the circumstances surrounding the violation to determine the appropriate consequences for the defendant's violation.  W.R.Cr.P. 39(a)(5); *Bazzle*, ¶ 26, 434 P.3d at 1097.  Additionally, "[t]he probationer shall have the right . . . at the dispositional stage to make a statement in mitigation of revocation."  W.R.Cr.P. 39(a)(5)(A).  "The Wyoming Rules of Evidence do not apply to the dispositional stage." W.R.Cr.P. 39(a)(5)(B).  *See Bazzle*, ¶ 26, 434 P.3d at 1097.

[¶22]         In addition to the requirements of W.R.Cr.P. 39, we have said that in order to revoke probation for the violation of a condition of probation not involving the payment of money, the violation must either be willful or threaten the safety of society.  The

5

willfulness of a probationer's violation is addressed during the dispositional phase.

*Robinson*, ¶ 20, 378 P.3d at 606 (quoting *Miller v. State*, 2015 WY 72, ¶ 8, 350 P.3d 742, 745 (Wyo. 2015)).

[¶23]  Applying these well-established laws to the facts of this case, it is clear the district court did not conduct any dispositional hearing at all, but rather moved immediately from hearing the evidence and arguments of the parties concerning whether the violations occurred—which are properly part of the adjudicatory phase—and directly into its finding of willfulness—which under Wyoming law is a part of the dispositional phase.  While the State correctly observes that this Court has never required separate and distinct hearings for each phase or stage and that the evidence presented during each stage could relate to the other stage, it provides no authority to support a conclusion that this Court has held that a stage or phase simply need not be conducted.  Thus, this Court must find that Mr. Velasquez has met the second prong of the test.

[¶24]  Finally, concerning the third prong—material prejudice—Mr. Velasquez must show the denial of a substantial right resulting in material prejudice.  The Court finds that he has done so.  Again, the record shows that the district court moved from the adjudication of the allegations to imposing sentence without allowing either party to present additional evidence and argument.  Simply put, the pronouncement of rulings in such manner calls into question the fairness and integrity of the proceedings.  While this Court has, on occasion, determined that errors in conducting the two parts of a revocation case could not be shown to have been materially prejudicial to a criminal defendant, it has done so given the unique facts and circumstances of each case.  *See, e.g.*, *Bazzle*, ¶¶ 32–35, 434 P.3d at 1098–99 (holding that a finding of willfulness during the adjudicatory phase was not prejudicial when the defendant had submitted a memorandum concerning willfulness before the adjudication and the court conducted several dispositional hearings after making such finding).  Cases such as *Bazzle* are unlike the present.

[¶25]  The State claims the district court did hear from Mr. Velasquez during the second revocation proceeding and that it relied on the promises he made at that hearing when it ruled in the third revocation proceeding.  It argues Mr. Velasquez should be judicially estopped from being able to contradict his promises or at least should be found to have waived his claim because he invited the error.  The State's reliance on judicial estoppel waiver or invited error is misplaced.

[¶26]  Judicial estoppel generally stands for the proposition "that where a man is successful in a position taken in a previous court proceeding, that position rises to the position of conclusiveness," and thus it precludes that man from "play[ing] hanky-panky with the courts of this state and thus interfer[ing] with the integrity of the judicial system." *Allen v. Allen*, 550 P.2d 1137, 1142 (Wyo. 1976).  Judicial estoppel is a narrow equitable doctrine

that bars a party from asserting inconsistent factual positions in subsequent proceedings when the prior position was successfully adopted by a court. *Matter of JDV*, 2025 WY 46, ¶¶ 13–14, 567 P.3d 666, 670 (Wyo. 2025) (estoppel applies only to irreconcilable factual assertions that were conclusive in a prior proceeding). In addition, the doctrine of judicial estoppel generally applies to representations of fact a person makes in different legal actions. This Court has said:

> A probation revocation hearing is not a trial on a new criminal charge. It is simply an extension of the sentencing procedure resulting from conviction of the basic charge, coupled with the requirement that the probationer be afforded due process of law before being deprived of the conditional right to liberty granted by probation.

*Minchew v. State*, 685 P.2d 30, 31 (Wyo. 1984). Mr. Velasquez's 2023 statements—that he would waive his rights and allow the court to impose the maximum sentence should he fall short again—were not sworn factual representations but rather mitigation arguments urging the court to grant one final opportunity. Those statements secured leniency in 2023 and are fully reconcilable with his current appellate claim. He sought mercy then, premised on compliance; he now seeks enforcement of procedural rights guaranteed by Rule 39 and due process. Because the positions are not factually contradictory and arise in interconnected stages of the same sentencing extension, judicial estoppel has no application.

[¶27] For similar reasons, the State's arguments invoking waiver or invited error fail. Waiver requires the intentional relinquishment of a known right, typically through an affirmative, advised act. *Benedict v. State*, 2024 WY 55, ¶ 13, 548 P.3d 989, 993 (Wyo. 2024) (distinguishing true waiver from forfeiture, the latter arising from mere failure to object and triggering plain error review). Mr. Velasquez's 2023 statements were unadvised, emotional pleas made without any colloquy confirming a knowing prospective waiver of future dispositional rights (such as the Rule 39(a)(5)(A) right to a mitigation statement or separate willfulness inquiry). Those statements cannot bind him in a subsequent revocation involving different allegations. In the same vein, his 2023 statements did not invite the procedural error complained of—they did not induce the district court to bypass the dispositional phase in 2025. Both due process and the provisions of Rule 39 require at least some inquiry into the reasons behind a violation, and the court has an obligation to determine what consequences should be had in light of the various factors it must consider. *See* W.R.Cr.P. 39(a)(5); *Bazzle*, ¶ 26, 434 P.3d at 1097.

## CONCLUSION

[¶28] Although Wyoming law does not require separate hearings for the adjudication and disposition phases of a probation revocation, each phase must be conducted in accordance

7

with such law. The failure to do so constitutes plain error. Here, while the district court properly adjudicated the allegations that Mr. Velasquez violated the terms and conditions of his probation, the same cannot be said of the disposition phase of those proceedings. Because such procedural deficiencies call into question the fairness of the process, this Court must remand the matter to the district court to remedy those deficiencies, specifically by conducting the disposition phase in accordance with Wyoming law.

[¶29] Reversed and remanded.