



FILED

Jun 16 2026, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Andrew T. Masterson,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

June 16, 2026

Court of Appeals Case No.
25A-CR-2176

Appeal from the Martin Circuit Court

The Honorable Isha E. Wright-Ryan, Judge

Trial Court Cause No.
51C01-2207-F3-89

---

**Opinion by Judge Vaidik**
Judges Bailey and Scheele concur.

**Vaidik, Judge.**

# Case Summary

[1] Andrew T. Masterson's sentence was modified to a community-corrections placement on the condition that he reside at a particular recovery house. The recovery house discharged him over two contested drug screens—despite a retest the next day being negative—and the State sought revocation of the community-corrections placement because Masterson was no longer at the program the trial court's order required. The trial court found that Masterson violated the conditions of his placement, even though it questioned the recovery-house director's credibility and recognized that the discharge was not Masterson's fault. Masterson appeals, challenging only whether a violation occurred. We hold that the State proved a violation: under *Woods v. State*, 892 N.E.2d 637 (Ind. 2008), a probationer's lack of fault does not bear on whether a violation occurred but only on the sanction imposed. Constrained by *Woods*, we affirm.

# Facts and Procedural History

[2] In January 2023, Masterson and the State entered into a plea agreement under which Masterson would plead guilty to Level 4 felony dealing in methamphetamine, the State would dismiss several other charges, and Masterson would be sentenced to six years in the Department of Correction (DOC). The agreement also provided that upon Masterson's successful

completion of Purposeful Incarceration, the trial court would consider a sentence modification.

[3] After successfully completing Purposeful Incarceration, Masterson sought to modify his sentence. In August 2024, the trial court found that Masterson was "eligible for Martin County Community Corrections for post-conviction home detention with residence at Behind the Wire Ministry," a recovery house for men in Loogootee. Appellant's App. Vol. 2 p. 28. The court ordered that Masterson

> shall remain in full compliance with all rules and regulations of the Martin County Community Corrections release program and Behind the Wire Ministries including the Defendant shall obtain a mental health and substance abuse assessment through a local mental health provider and attend, participate in, and successfully complete any treatment recommendations.

*Id.* at 29.

[4] Masterson was released from the DOC and placed at Behind the Wire on October 7. Behind the Wire had a drug-screening policy. Under that policy, upon a positive drug screen a resident was given the option to pay $50 to have the sample sent to a laboratory; if it came back negative, the $50 was refunded. *See* Tr. p. 26. But if it came back positive, the resident was dismissed from the program. *See id.*

[5] On Sunday, December 28, Joshua Jackson, Behind the Wire's assistant director, administered two instant urine drug screens to Masterson, which were

positive for morphine. Masterson challenged the positive results and asked that the sample be sent to a laboratory for confirmatory testing according to Behind the Wire's policy. Jackson called Scott Highberger, Behind the Wire's director, to request permission to send the sample to a laboratory, but Highberger said no. *See id.* at 20-21.

[6] Highberger then contacted Danielle Murphy, the director of Martin County Community Corrections, and said he wanted Masterson removed from the facility "immediately" because he had submitted two positive drug screens and was being terminated from the program. *Id.* at 32. Because it was a Sunday evening, Murphy told Highberger that Masterson would have to stay there overnight and that Highberger would have to bring him to her office in the morning.

[7] The next morning, December 29, Masterson went to Murphy's office, where two drug screens—oral and urine—were administered and sent to a laboratory; both were negative for all substances. That same day, Masterson was dismissed from Behind the Wire. *See* Appellee's App. Vol. 2 p. 36.

[8] The next day, December 30, the State filed a petition to revoke Masterson's community-corrections placement because he "violated the terms and conditions of Martin County Community Corrections by being dismissed/terminated from Behind the Wire Ministries Program immediately due to two positive drug screens." *Id.* at 37. A fact-finding hearing was held in July 2025. Jackson testified that on the same day he received a subpoena to

testify at the hearing, Highberger called him and asked him to testify that Behind the Wire "did not have a policy in place yet for laboratory testing," even though it did. Tr. p. 23. Jackson also testified that because "Behind the Wire is a Level III certified . . . recovery residence," it is required to "follow NARR, National Alliance of Recovery Residences' ethical policies." *Id.* at 20. One of those policies provides:

> **When a positive drug test result is contested by a resident**— particularly in a non-lab testing situation such as in a recovery-house-administered urine screen—a process must be in place for the resident to prove that the results are inaccurate.
>
> Ideally, such verification shall take place prior to the resident being asked to vacate the residence.

Ex. p. 6.

[9] Murphy testified that "Masterson was not violated from Community Corrections for failed drug screens"; rather, he "was violated due to his modification order stipulating Behind the Wire." Tr. p. 37. She explained that she could not "force" Highberger to keep Masterson in the program and that her "hands [were] tied" by the trial court's modification order listing Behind the Wire as the place where Masterson had to reside. *Id.* at 37, 38. She said that once Highberger decided to terminate Masterson from the program, even if she disagreed with his decision, she had "no choice" but to seek revocation. *Id.* at 38. She explained that, as the community-corrections director, she couldn't

have requested a modification of Masterson's placement, but Masterson could have. *See id.* at 41-42.

[10] The State argued that a "strict liability" standard applied and that because Masterson did not complete the Behind the Wire program—even if through no fault of his own—he was in violation of his placement at Behind the Wire. *Id.* at 45. The trial court found that Masterson violated the conditions of his placement at Behind the Wire. The court didn't base its decision on the failed drug screens—in fact, the court said it was not considering them at all, *see id.* at 48. Rather, the court based its decision on the fact that Masterson was discharged from Behind the Wire and that "anytime any individual decides they want to go to a rehabilitation program, they are at the discretion of the director to be there":

> I am very disappointed with this situation, but I have to stand on the fact that I issued an order because of a request from your client to go to Behind the Wire. That's where he wanted to go. I granted his modification, allowed him to go to Behind the Wire, through supervision of Community Corrections.
>
> And I'm not relying on Mr. Highberger today. I find his character in question as of what I heard today on the record under oath. But I'm relying on Community Corrections, and the director saying, I was called by the facility to immediately terminate him, I had no other option but to do that. So, orders can read better in the future. We're all practicing law around here, right? So, I do think that as far as I'm concerned, my orders will read very differently, as I will give Community Corrections the authority to make sure this doesn't happen again, in this circumstance.

But it was the order, and it was what happened, and I do find [by] a preponderance of the evidence that he did violate the terms and conditions of Community Corrections. So, I do believe a disposition is necessary.

. . . .

I now have a serious concern about this facility. On the record today I was told that the director of the program tampered with witness testimony before coming to my court to testify to me. So, I have a real problem, a real problem, with that. And I don't know that I'll ever order anybody to Behind the Wire again.

*Id.* at 48, 50, 52. The court proceeded to disposition, and the parties agreed that Masterson would serve his remaining time on work release through Wabash Valley Regional Community Corrections. *Id.* at 55.

[11] Masterson now appeals.

# Discussion and Decision

[12] A defendant's placement in community corrections may be revoked if he violates the terms of that placement. Ind. Code § 35-38-2.6-5. A community-corrections revocation proceeding is treated the same as a probation-revocation proceeding and follows a two-step process: (1) the trial court must make a factual determination that a violation occurred and (2) if a violation is proven, the court must determine whether it warrants revocation. *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008); *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), *reh'g denied.* Masterson only challenges the trial court's step-one determination,

arguing the State presented insufficient evidence to prove he violated the conditions of his community-corrections placement at Behind the Wire. The State must prove the alleged violation by a preponderance of the evidence. *Treece v. State*, 10 N.E.3d 52, 56 (Ind. Ct. App. 2014), *trans. denied*.

[13] Masterson claims that the trial court erred in finding that he violated his placement at Behind the Wire based on the two positive drug screens because they were not reliable and he tested negative the very next day. *See* Appellant's Br. p. 12. But the trial court did not find that Masterson violated his placement based on those drug screens; the court disregarded them entirely. Instead, the court found that Masterson violated the conditions of his placement at Behind the Wire because he was dismissed from the program.

[14] To the extent Masterson argues that the trial court applied an improper "strict liability" standard in finding that he violated the conditions of his placement at Behind the Wire, *see id.* at 10, this argument fails, too. In *Woods*, our Supreme Court explained:

> In one sense all probation requires "strict compliance." That is to say probation is a matter of grace. And once the trial court extends this grace and sets its terms and conditions, the probationer is expected to comply with them strictly. If the probationer fails to do so, then a violation has occurred.

892 N.E.2d at 641 (citation omitted). Revocation, however, is not automatic, and a defendant must be given an opportunity to explain why his probation or community corrections should not be revoked:

> [T]he very notion that violation of a probationary term will result in revocation no matter the reason is constitutionally suspect. For example, failure to pay a probation user fee where the probationer has no ability to pay certainly cannot result in a probation revocation. **And what of a probationer not reporting to his probation officer because he was in a coma in a hospital? Or consider a failed urinalysis test because of prescription medication a probationer is taking on orders from his treating physician.**

*Id.* (citations omitted, emphasis added). The Court stated that lack of volition or willfulness is not a "defense" but rather should be considered in determining an appropriate sanction once a violation is found. *Id.* (citing *United States v. Warner,* 830 F.2d 651, 657-58 (7th Cir. 1987) ("While good faith and lack of willfulness does not preclude finding a probation violation, defendant could and did raise his alleged good faith before the court as a factor for the court to consider in deciding whether to revoke probation.")).

[15] In *Trejo v. State*, 211 N.E.3d 591 (Ind. Ct. App. 2023), *reh'g denied*, *trans. denied*, this Court addressed a similar situation. There, the trial court found that the defendant violated his probation by failing to meet with his probation officer and ordered him to serve 2.5 years of his previously suspended sentence. The defendant claimed that "he could not meet with the probation department because he was in the custody of United States Immigration and Customs Enforcement (ICE)." *Id.* at 592. We affirmed the trial court's finding that the defendant violated his probation because

"lack of volition" is "not a defense" to an alleged probation violation. *Woods*, 892 N.E.2d at 641. It is only a factor for the trial court to consider in fashioning the appropriate sanction once a violation is found. . . . **Trejo's inability to meet with the probation department because he was in ICE custody at the time has no bearing on whether the probation violation occurred.** Instead, his alleged inability to comply with Standard Condition 1 bears on the trial court's sanction for the violation, which Trejo does not challenge.

*Id.* at 593 (citation omitted, emphasis added).

[16] Here, Masterson doesn't dispute that he was discharged from Behind the Wire, the program where the trial court's modification order required him to reside as a condition of his community-corrections placement. His discharge was therefore a violation of that condition. As in *Trejo*, Masterson's contention that the discharge was not his fault—that he was terminated over contested drug screens—does not bear on whether a violation occurred; it is relevant only to the appropriate sanction, if any, once a violation is found. *See Woods*, 892 N.E.2d at 641; *Trejo*, 211 N.E.3d at 593. Because the State proved by a preponderance of the evidence that Masterson violated the conditions of his placement, the trial court did not err in its step-one determination. We acknowledge that this violation will appear on Masterson's record even though his dismissal from Behind the Wire was entirely attributable to Highberger's questionable conduct. But we are constrained by *Woods* to hold that a violation occurred. *Woods* recognizes that a probationer who misses an appointment because he is in a coma has nonetheless committed a violation, with his

condition bearing only on the sanction. If there is a change to *Woods*, it must come from our Supreme Court.[1] We therefore affirm.

Affirmed.

Bailey, J., and Scheele, J., concur.

ATTORNEYS FOR APPELLANT

Robert T. Miles
Justin W. Roberts
David J. Noetzel, Certified Legal Intern
Kolb Roellgen & Traylor LLP
Vincennes, Indiana

---

[1] The State cites to other jurisdictions that have ruled similarly. For example, in *State ex rel. Nixon v. Campbell*, 906 S.W.2d 369 (Mo. 1995), *reh'g denied*, the defendant was convicted of rape and sentenced to seven years. Execution of the sentence was suspended upon the condition that he complete a two-year inpatient sex-offender program at the state hospital. Shortly thereafter, the state canceled the program, and the prosecutor sought to revoke the defendant's probation. The trial court found that the defendant violated his probation and ordered him to serve his sentence in prison. On appeal, the Missouri Supreme Court held, "There can be no question that [the defendant] violated the terms of his probation. The court had conditioned his probation upon completion of a two-year sex offender program. The state has now discontinued this program and [the defendant] cannot comply with the terms of his probation." *Id.* at 371. The court went on to address whether the defendant's probation was properly revoked and concluded that it was, reasoning that the defendant still needed inpatient treatment that was only available in prison. *See also State v. Baxter*, 563 A.2d 721, 729-30 (Conn. App. Ct. 1989) ("Although a finding of a violation of a condition of probation should not lead to a rote revocation of probation[,] there is no constitutional requirement, except in the circumstance of [failing to pay a fee or fine], that the trial court must first find that the violation was willful, before probation may be revoked." (citation omitted)).

Other states, however, require a probation violation to be willful. *See, e.g.*, *Bazzle v. State*, 434 P.3d 1090, 1099 (Wyo. 2019); *Stringfield v. State*, 254 So. 3d 1127, 1128 (Fla. Dist. Ct. App. 2018).

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

Jennifer B. Anwarzai
Deputy Attorney General
Indianapolis, Indiana